## Staunton.

KERAN v. TRICE'S EX'ORS AND ALS.

*Absent, Moncure, P.*

1. The deposition of T in a suit of K v. T was taken and closed December 13th, 1876, K being present in person and by counsel and cross-examining the witness. Afterwards T died and K gave his deposition, K and T being the original parties to the transaction which was the subject of investigation in the cause. HELD: K's deposition could not be read, his disqualification being clearly fixed by the very letter of the statute; but the deposition of T was admissible, because he was competent to testify in his own behalf when he deposed.

2. The amendments (Acts 1876–77, ch. 198, ch. 256) to the Code (ch. 172, §§ 21, 22) are not retrospective; but it would seem that K's deposition might perhaps have been read, if it had been taken after, instead of before, the amendments went into operation.

3. A bill to impeach a decree for fraud is an original bill in the nature of a bill of review, and should state the decree and the proceedings which led to it, with the circumstances of fraud on which it is impeached.

4. When a decree has been obtained by fraud, the court will restore the parties to their former situation, whatever their rights may be; and such a bill may be filed without leave of court previously obtained.

5. What statements made by a plaintiff to a defendant residing in a county remote from the court in which the suit is pending will be regarded as operating to mislead, deceive and impose upon such defendant.

This is an appeal from the decree of the circuit court of Rockingham county.

In November, 1874, Eli Keran filed his bill in the circuit court of Rockingham county against James M. Trice and others, in which he alleged that on the 15th of January, 1854, he executed a bond to said Trice for $700, and on the

16th of March, 1857, he gave to Trice, in lieu of the bond, a negotiable note for a like sum payable thirty days after date at the Rockingham bank at Harrisonburg. Trice having brought an action on the note, Keran, on the 30th of May, 1859, confessed a judgment thereon for the amount of the note, with interest from April 18, 1857. Keran being in embarrassed circumstances, on the 13th of August, 1859, executed a deed of trust to T. L. Yancey to secure certain creditors, and among them James M. Trice, to the amount of said judgment. In November, 1872, Trice issued an execution, which was levied on personal property of the plaintiff, whereupon it was agreed that if the plaintiff would pay $900 to the attorney of Trice on or before September 15th, 1873, Trice would release the remainder of said debt, and the stipulated sum was paid accordingly. Afterwards the plaintiff found a receipt for $700, dated May 30th, 1859, in the hands of Z. D. Shaver, by whom the money had been paid for the plaintiff, but he either did not know it or had forgotten it. The plaintiff claimed therefore that no debt was due to Trice, when the judgment was confessed or when the trust deed was executed; and prayed that the judgment might be cancelled; that the deed of trust be released and that Trice be decreed to pay him $900 with interest from September 15th, 1873, with a prayer for general relief.

On the 17th of April, 1875, the cause came on to be heard on the bill and exhibits, whereupon the court decreed in accordance with the pretensions of the plaintiff, and that he recover of Trice the sum of $900, with interest from September 15th, 1873, till paid, and costs.

At the September term, 1875, of the court, Trice obtained leave to file, and did afterwards file, a bill of review, in which, after reciting the material allegations of Keran's bill, he went on to state that on the 5th of December, 1874, the sheriff of Louisa county served a summons on him to

answer the said bill, but having been previously served with process in a suit between Keran and Shacklett, grow-, ing out of the trust deed, and regarding himself merely as a formal party to the suit, Trice did not think it necessary to file an answer or pay any attention to the cause; and shortly afterwards, and before the decree was entered, he met with Keran and asked him particularly what it meant, and Keran replied that "it was some of Shacklett's business matters," and he could not tell anything further about it, and referred the plaintiff to Col. O'Ferrall, who had been his counsel in collecting his claim against Keran, and so the plaintiff gave himself no uneasiness about the matter after this conversation. The plaintiff then presented in detail the specific grounds on which a review of the decree was asked, denied that the debt had ever been paid, etc.

At the May term, 1876, the death of Trice being suggested, it was ordered that the suit for review proceed thenceforth in the name of Trice's executors. Other proceedings were afterwards had, not necessary to be here stated, and among them the deposition of Keran was taken, which was objected to by Trice's executors on the ground that Trice, the other contracting party, was dead, and opportunity had been afforded to Keran to give his deposition in the cause during the life of Trice, but this was never done, &c.

The two causes of Keran v. Trice's ex'ors and Trice's ex'ors v. Keran and als., came on to be heard together on the 7th of June, 1878, whereupon the court decreed that the decree of April 16th, 1875, in the suit of Keran v. Trice, be annulled and set aside and the cause dismissed; and that Trice's executors recover against Keran the costs expended by their testator and themselves in said suits, and leave was given to sue out execution for the same, and the causes were removed from the docket; and from this decree Keran obtained an appeal and *supersedeas.*

Keran v. Trice's Ex'ors and als.

*M. Walton* and *G. Eastham,* for appellant.

*Wm. B. Compton,* for appellees.

BURKS, J., delivered the opinion of the court.

Trice and Keran (the appellant), the original parties to the transaction, which is the subject of investigation in this cause, both deposed. When Trice gave his deposition, Keran was present in person and by counsel and cross-examined him. Trice afterwards died, precisely when does not appear, but Keran had abundant opportunity to give his own deposition after Trice had given his and before his death. The question is raised, whether under our statute allowing parties to testify in their own behalf with certain qualifications and exceptions, both of these depositions can be read, or either, or neither. The deposition of Keran was taken and closed on the 13th day of December, 1876. His competency must be determined by the statute as it stood on that day. That statute is embodied in the Code of 1873, §§ 21, 22, 23, 24. Under it, we have no doubt that the deposition of Trice may be read. He was certainly competent to testify in his own behalf when he deposed, and his subsequent death cannot deprive his representatives of the benefit of his testimony, although, by reason of his death, Keran may have been rendered incompetent to testify in behalf of himself.

Keran's disqualification would seem to be clearly fixed by the very letter of the statute; for, when he deposed, Trice, the other original party to the transaction, the subject of investigation, was dead. Yet, we find it stated by a distinguished author, that while "intermediate incapacitation of a witness * * * does not exclude his deposition taken when he was competent," yet, "when a deceased party's deposition is put in evidence, the other party being

still living, such other party should be admitted in reply."
1 Whart. Law of Evidence, § 477. For this proposition,
*Monroe* v. *Napier*, 52 Ga. 385, is cited. We have examined
the case and it seems to support the text, but it should be
understood as the construction of a local statute by a local
tribunal; and while entitled to great respect, it has no force
as authority beyond the jurisdiction in which the decision
was made.

The Georgia act seems to be very much like ours, but we
cannot follow the construction of the supreme court of that
State, without disregarding, as we think, the plain terms
and obvious meaning of the law.

After Keran's deposition was taken and before the cause
was heard, the statute (in the Code) before cited was
amended. See acts 1876–77, ch. 198; ch. 256. In its original
form, the construction was exceedingly difficult and em-
barrassing, as the numerous decisions of this court will
show, and as amended it is still more obscure and ambig-
uous; but it would *seem* that under the amendments, the
deposition of Keran might perhaps have been read, if it
had been taken after instead of before the amendments
went into operation. They took effect from their date, and
evidently are not retrospective, so as to authorize as evi-
dence the deposition of a witness incompetent when he
deposed. The result of our investigation, however, will
not be changed, if we treat the deposition, as we shall do
in what we have to say, as if it were competent evidence.

This case, upon the facts, is quite a remarkable one. On
the 30th day of May, 1859, Keran confessed judgment in
behalf of Trice in the county court of Rockingham on a
negotiable note of which he was the maker. In the month
of August following he secured the judgment (owing other
debts) by deed of trust on his property. In April, 1872, in
the chancery suit of *Keran* v. *Newman and others* then pend-
ing, he testified that the judgment was still unpaid, and in

the same suit Trice testified to the same effect. In September, 1873, he paid to Trice or his attorney on Trice's order nine hundred dollars in satisfaction of the judgment; and in 1874 he professes to have discovered among his papers written evidence that he had paid the debt fifteen years before, and, what is most singular, that it was paid on the very day the judgment was confessed. His pretension is, that in 1854 he borrowed seven hundred dollars from Trice for which he gave him his bond—that he paid up the interest on this bond until some time in the year 1857, when he gave the negotiable note, on which the judgment was confessed, in lieu of the bond which Trice promised but neglected to surrender; and that the amount of the bond was paid to Trice on the day the judgment was confessed and was paid by Zebulon D. Shafer out of funds in his hands belonging to him (Keran). He produces the bond with a receipt upon it in these words:

"Received the within amount of Eli Keran, through the hands of Z. D. Shafer, May 30, 1859.    JAMES M. TRICE."

Now, to establish his pretensions, it was essential that he should prove, first, that the bond and the note represented one and the same debt. He testifies positively that this was so, and the testimony of his son tends to corroborate his statements in part. On the other hand, Trice is equally emphatic that it was not so, and he is supported to some extent by his son-in-law. But there is a circumstance, not adverted to by the counsel on either side in their briefs, which is hardly reconcilable with the theory that the note was a substitute for the bond. The note (not produced because burnt with the other records of Rockingham by Hunter's troops during the late war) bore date March 16, 1857, and was payable at bank thirty days after date. This is clearly shown by the notary who protested it, the cashier of the bank where it was payable, and the

fragment of the execution book produced. The day of its maturity (days of grace added) was April 18, 1857. On the bond are the following credits endorsed:

"Interest paid on within note up to this date, February 10th, 1856.          JAMES M. TRICE."

"Interest paid on the within bond up to this date, May 14th, 1857.          JAMES M. TRICE."

When Keran was under examination as a witness this question was propounded to him by his counsel:

"Look at the receipts on the back of the bond for 'interest up to this date, February 10, 1856, and up to this date, May 14, 1857,' and purporting to have been signed by James M. Trice, and state whether you paid the interest referred to, and if so, to whom, and whether or not James M. Trice signed said receipts?"

"Answer. I paid it to Trice, and he signed those receipts for interest."

Now, how can this be, if the note, as Keran contends, was given in satisfaction of the bond? At the time of the last payment of interest on the bond and of the endorsement of the credit therefor (May 14, 1857), the note had not only been given, but it had matured. Why should Keran have paid the interest on a bond which, according to his account, had been satisfied by the note two months before and ought then to have been surrendered to him as discharged?

But was the bond really paid in the manner alleged? The only witness relied on to establish this, the second essential fact, is Shafer. He pronounces the receipt (which has been referred to) on the back of the bond to be in his handwriting, and he thinks the signature is Trice's. Independently of this, he does not profess to know anything whatever of the alleged payment. He says he does not remember time, place, nor fact of payment, nor any trans-

action with Trice, but *argues* from the receipt that he must have made the payment out of Keran's funds in his hands. He does not know, but thinks he delivered the bond to Keran in the fall or winter of 1859. This is indeed very unsatisfactory, when we consider that he was present, as he states, and advised Keran to confess the judgment under Trice's promise to indulge him in payment. The payment of the bond, if made, was on that day—the date of the judgment and of the receipt. He was a stranger to Trice and was introduced to him at that time by Keran. Is it credible that he would have made payment then of so large a sum ($700) without Keran's direction, or at least that he would not have informed him of it at once? Moreover, Trice could not have collected the money under a mistake (for the note had been given only about two years), and it is not reasonable to suppose that he practiced a fraud which was likely to be exposed at the very instant.

It is not worth while to discuss the evidence further. We are of opinion, that Keran has failed to establish either of the facts adverted to, both of which are essential to make out his case.

As Trice was entitled to the nine hundred dollars which he received in satisfaction of the judgment, it remains to consider whether it was competent for the circuit court, under the circumstances, to set aside the decree which required him to pay it back to Keran.

That decree was on a bill taken for confessed, Trice having failed to appear and make defence. The suit was brought in the circuit court of Rockingham, against Trice, who lived in Louisa county, and other defendants residing in Rockingham.

The inquiry is not material, whether the last bill filed by Trice could be sustained as a technical bill of review on either of the grounds upon which such bills are brought— errors of law apparent in the decree, or newly discovered

evidence—if the decree was impeachable for fraud, and the bill contains proper allegations to put that matter in issue. For, a bill to impeach a decree for fraud is an original bill in the nature of a bill of review, and should state the decree and the proceedings which led to it, with the circumstances of fraud on which it is impeached. 20 Amer. Decis. 175, and cases there cited. "There is no doubt," says Mr. Justice Story, "of the jurisdiction of courts of equity to grant relief against a former decree, where the same has been obtained by fraud and imposition; for these will infect judgments at law and decrees of all courts; but they annul the whole in the consideration of the courts of equity. * * * Where a decree has been so obtained, the courts will restore the parties to their former situation, whatever their rights may be. This kind of bill may be filed without leave of the court being first obtained for the purpose, the fraud used in obtaining the decree being the principal point in issue, and being necessary to be established by proof, before the propriety of the decree can be investigated." Story's Eq. Plead. § 426.

The bill does not charge fraud in terms, nor is that necessary, but it states facts and circumstances, which, if true, make a case of fraud and imposition. It alleges, in substance, that when the complainant was served with process, he supposed it related to a pending suit between Keran and Shacklett, in which the complainant was a formal party, and that he did not think it necessary to file an answer, or even to pay any attention to the cause, and shortly afterwards and before any decree was rendered, he saw Keran and asked him particularly what it meant, and Keran replied that it was some of Shacklett's business matters, and he could not tell him anything further about it, and referred the complainant to Colonel O'Ferrall for further information, and that as O'Ferrall had been complainant's counsel in collecting the claim against Keran,

the complainant gave himself no uneasiness about the matter after this conversation.

In short, the charge was that the complainant had been deceived and imposed upon by the statements of Keran, and was thus induced not to make defence to the bill filed by Keran. And we are of opinion, that the charge is established by the proofs. It is not denied by Keran in his answer. He merely denies that O'Ferrall was the attorney of Trice at the time he (Keran) instituted his suit against him. In his deposition, Trice says that he knew nothing of the nature of the suit until an execution came out against him—that he had received notice, but knew that he did not owe any one in Rockingham—that he saw Keran and asked him about it, and Keran said he could tell him nothing about it; that he had better see Colonel O'Ferrall about it; that he supposed it was some of Shacklett's matters.

When Keran was examined as a witness in his own behalf, in answer to a question by his counsel, he says, " I had a conversation with Mr. Trice at Louisa courthouse last April a year, or two years. He came to me and asked me what the notice meant. Says I, don't you know? and you had better attend to it. That is all that passed between us."

This answer to Trice's inquiry, if ever made, was itself evasive and misleading. "Don't you know," said he. This implied that it was a transaction of which Trice had present knowledge, and was calculated to put him off his guard, and Trice, in his mind, might very well have referred the answer to the Shacklett suit, which has been mentioned. How did Keran suppose that Trice knew anything of the claim preferred? It does not appear that Keran had ever made any demand of him, or even mentioned the subject to him. He brought his suit in a distant county in which Trice did not reside, and the attorney representing him, to

whom he referred, had been Trice's counsel in the collection of the money from Keran in September, 1873.

Upon the whole matter, we are of opinion, that there is no error in the decree appealed from, and that it should be affirmed.

DECREE AFFIRMED.