Boyd and another, Respondents, vs. Gore, Executor, Appellant.

*October 7—October 25, 1910.*

*Evidence: Transactions with persons since deceased: Depositions taken before death: Landlord and tenant: Eviction: Voluntary surrender: Counterclaim.*

1. Testimony as to personal transactions with a person since deceased, inadmissible under sec. 4069, Stats. (1898), is not rendered admissible by the fact that it was taken by deposition before the death of such person.
2. Where the landlord had objected to a tenant remaining on a farm, because the latter got into debt, and had told the tenant that he would better leave because he could not carry on the place, acquiescence and removal by the tenant and acceptance and resumption of possession by the landlord do not show an eviction, but a voluntary surrender.

3. Where a voluntary surrender of leased premises is accepted by the landlord, all liabilities under the lease which would arise in the future had no surrender taken place are terminated, but liabilities which have already accrued remain unaffected.

4. In an action by the assignees of a claim, a counterclaim against their assignor upon which they are not personally liable can be allowed only so far as it offsets the claim sued upon.

APPEAL from a judgment of the circuit court for Dodge county: MARTIN L. LUECK, Circuit Judge. *Reversed.*

This is an action to recover certain sums which the plaintiffs claim as assignees of one Coller. The defendant by counterclaim seeks to offset against the plaintiffs' claims certain demands which he claims existed in his favor against Coller at the time the assignment was made. The action was tried by the court, trial by jury having been waived. It appeared that October 1, 1906, William Gore, the defendant's testator, leased by a written agreement his farm of 160 acres to one Coller, the plaintiffs' assignor, for one year upon shares; that the lease was modified in certain particulars immaterial here in June, 1907, and when it expired, October 1, 1907, was renewed for the year; that in March, 1908, Coller for some reason vacated the premises and Gore took possession and placed a new tenant therein. Coller claimed that when he quit possession of the premises the defendant owed him, among other items, the following:

For plowing done in the fall of 1907......................     $85 50
For cash received by Gore for milk belonging to Coller......      80 00
For chores done by Coller at Gore's request...............       6 00

Total ...........................................   $171 50

Immediately after quitting the premises Coller sold his demand for these sums with others to the plaintiffs, and thereupon they brought this action against Gore on the 29th of April, 1908. Gore died September 20, 1908, and on the 28th of November following, upon proper motion, the action was revived against the present defendant as executor of

William Gore's will. The defendant's counterclaim consisted, among other charges, of a charge for Coller's failure to draw out the manure upon the farm during the winter of 1907–1908, amounting to $75, and a further charge for a small quantity of pork furnished to Coller of $1.90. The remaining charges are unnecessary to be stated, as they have no bearing upon the issues of this appeal. The trial court found that Gore owed Coller the following sums:

| | |
|---|---:|
| Money received for milk | $45 00 |
| Amount due for chores | 6 00 |
| Amount due for plowing in the fall of 1907 | 67 50 |
| Total | $118 50 |

The court further found that Coller owed Gore for pork furnished $1.90, and disallowed all other claims on the part of the defendant, leaving a balance due to the plaintiffs of $116.60, for which judgment was rendered, and from which judgment this appeal is taken.

The cause was submitted for the appellant on the brief of *R. D. Tillotson,* and for the respondents on that of *C. E. Hooker.*

WINSLOW, C. J.   The appellant makes no objection to the items of $45 and $6 allowed by the court to the plaintiffs for milk money received by Gore and for chores. There are but two items in dispute on this appeal necessary to be considered, namely, the item of $67.50 allowed by the court to the plaintiffs for plowing done by Coller in the fall of 1907, and the item of $75 claimed by defendant as damages for Coller's failure to draw out the manure during the winter, which latter item was disallowed by the court. It was Coller's duty under his lease to do both of these things; hence it is plain that he can neither recover for his plowing nor escape liability for his failure to draw out the manure, unless he was excused from compliance with the provisions of his lease by some extrinsic fact.

The trial court found in effect that he was evicted by the defendant's testator in March, 1908, and from this premise he concluded that Coller was entitled to recover for the plowing already done in preparation for the season of 1908. He also found that Mr. Gore, the testator, told Coller that he need not draw out the manure in the winter. Both of these findings were based upon the testimony of Coller detailing conversations which he had with Mr. Gore prior to his death. This testimony was objected to, and was of course inadmissible under the provisions of sec. 4069, Stats. (1898) (which excludes the testimony of a party or one under whom he derives title with respect to personal transactions with a deceased person under whom the opposing party claims), unless the fact that Coller's testimony was in the form of a deposition taken before Gore's death makes the statute inapplicable.

There has been some difference of opinion among the courts upon this question, and it seems clear that the great weight of authority is to the effect that the statute is still applicable and the testimony inadmissible. 12 Ency. of Ev. 733, 734, note 82; *Park v. Lock,* 48 Ark. 133, 2 S. W. 696; *Smith v. Billings,* 177 Ill. 446, 53 N. E. 81; *Quick v. Brooks,* 29 Iowa, 484; *Hardin's Adm'r v. Taylor,* 78 Ky. 593; *Messimer v. McCray,* 113 Mo. 382, 21 S. W. 17; *St. Clair v. Orr,* 16 Ohio St. 220. Some courts have indeed held to the contrary. *Neis v. Farquharson,* 9 Wash. 508, and cases cited in opinion; *McMullen v. Ritchie,* 64 Fed. 253; *Keran v. Trice's Ex'rs,* 75 Va. 690.

The ground on which these last named decisions rest is substantially this: At common law if a witness, after being examined or having his deposition taken, become interested in the action, his testimony is not rejected on that account, because he was competent at the time the testimony was given, and his subsequent acquisition of an interest could not affect the credibility of testimony given before that event. *Cam-*

*eron v. Cameron,* 15 Wis. 1; This being the undoubted law, it is said that upon similar grounds it should be held that, if a witness was competent to testify to transactions with the opposite party when the deposition was taken, the subsequent death of the party should not prevent the deposition from being read as to those transactions. It seems very certain to us that this argument loses sight of the radical difference in the situation of the two cases. In the first case the common-law rule rejecting the testimony of an interested witness was founded simply on the fact that by reason of the existence of such interest it was considered that his testimony probably would be seriously affected thereby, and hence it was perfectly logical to hold that, if the interest did not exist when the testimony was given, the disqualification should not be held to exist at all. But in cases occurring under sec. 4069, Stats. (1898), the reason for excluding the testimony of one party as to transactions with a deceased opposing party is simply that, because the mouth of one party is closed by death, it is only fair that the mouth of the other should be closed by the law. This reason exists to its full extent as well when a deposition has been taken before the death took place as when no deposition has been taken, unless indeed the depositions of both parties have been taken under a stipulation that they may be read upon the trial, in which case it may well be that both would be admissible. *MacDonald v. Woodbury,* 30 Hun, 35.

The statute authorizes objections to be taken upon the trial in case of evidence taken by deposition to the same extent as if the witness were personally present (sec. 4092, Stats. 1898), and we conclude that the objections taken on the trial to the testimony of Coller concerning transactions and communications had by him personally with Mr. Gore in his lifetime should have been sustained.

With this testimony out of the case there is nothing to support the conclusion that Coller's failure to haul out the ma-

nure during the winter was excused, and, there being no dispute as to the expense of hauling it out, the amount of that expense should have been allowed on the counterclaim, making a total of $69.40 which should have been allowed thereon.

There is no claim that any eviction is shown except by the evidence of Coller as to conversations with Gore which we hold to be inadmissible, and if there was no eviction there is no justification for a recovery on account of the fall plowing done by Coller, for it was his duty under his contract to do such plowing. As matter of fact, however, the objectionable testimony shows no eviction. It simply shows that Gore in the spring of 1908 objected to Coller's staying on the place because he (Coller) had got into debt, and told him he (Gore) thought he (Coller) had better leave because he could not carry on the place, and Coller said, "All right; if you think I cannot, that is enough." In substance this is the entire basis for a claim of eviction, and Mr. Coller closes his testimony on the subject with this question and answer: "*Q.* You moved off the place simply because Gore told you he didn't want you to stay there any longer? *A.* Yes sir, I did." This does not show an eviction, but, taken in connection with the acceptance and resumption of possession by the landlord, it does show a voluntary surrender. It is unnecessary to decide whether it would have amounted to an eviction had there been an absolute demand of possession by the landlord and a vacating of the premises by the tenant in response thereto, for the testimony does not present that situation.

It is quite well settled that where there is a voluntary surrender, accepted by the landlord, all liabilities under the lease which would arise in the future had no surrender taken place are terminated, but liabilities which have already accrued remain unaffected. 2 Tiffany, Landl. & T. 1348, 1349. Under no view of the case, therefore, can the plaintiffs recover for the plowing done in the fall of 1907, for Coller's contract required him to do it, and his voluntary surrender of

possession raises no obligation on the part of the landlord to pay for it.    The result is that the plaintiffs' claim is reduced to $51 and the defendant's counterclaim must be allowed at $69.40.

Inasmuch as the action is brought by assignees of Coller, the counterclaim can only be allowed so far as it offsets the plaintiffs' claim, as the assignees, of course, are not personally liable.

*By the Court.*—Judgment reversed, and action remanded with directions to enter judgment dismissing the complaint.