𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

PENN V. TUCKER AND OTHERS.

March 13, 1913.

1. EQUITY—*Final Decree—Reopening—Unadministered Assets.*—A decree which directed a receiver to invest a fund under the control of the court for the benefit of infants during their minority, and declared that upon the termination of the homestead period during which infants were to enjoy it, the principal was to be applied to certain designated judgments, and removed the case from the docket, does not operate automatically to apply the fund to the payment of said judgments, so as to deprive a court of equity of the power to administer the fund when the judgment creditors cannot be found, and no one is asserting any claim to the fund except the widow and children of the man whose estate produced the fund.

2. EQUITY—*Original Bill in Nature of Bill of Review—Case Improvidently Stricken from Docket.*—Where a final decree has been improvidently entered in a suit removing it from the docket before the rights of the parties with respect to a fund on deposit in bank had been adjusted and the money disposed of, and there is no claimant of the fund other than the widow and children of a decedent, and the facts are such that they are indisputably entitled to it, but no one is authorized to withdraw the fund from the bank, and the time for filing a bill of review has passed, the proper remedy is for the widow and children to file an original bill in the nature of a bill of review to collect the deposit and pay it to the parties entitled according to their respective rights as an unadministered asset of the decedent's estate.

Appeal from a decree of the Circuit Court of Henry county dismissing complainants' bill.

*Reversed.*

The opinion states the case.

*George H. Marshall,* for the appellants.

No appearance for the appellees.

WHITTLE, J., delivered the opinion of the court.

The subject of this litigation is $281 with interest from June 25, 1910, being the remnant of a fund arising from the proceeds of sale of a store house and lot in Martinsville, Virginia. The property was jointly owned by J. B. Anglin and J. C. Penn, and upon the death of the latter on February 1, 1890, Anglin brought a suit for partition against his widow and heirs. The property was accordingly sold for partition in 1902. In that suit an account of debts against Penn's estate was ordered. His estate was heavily indebted, and the commissioner reported a large number of judgments, which had been obtained in a creditors' suit against the administrator and others, as subsisting debts against the estate. None of the creditors appeared to prosecute these demands. Indeed, all the judgments were assigned to the widow, with the following exceptions: a judgment in favor of Tucker, Smith & Co., for $65.97, and one-half of a judgment in favor of E. G. Leigh, Jr., & Co., for $21.12. The fund involved constituted a part of the homestead set apart to the infant children of J. C. Penn.

By a decree of the January term, 1903, the court directed its receiver, H. G. Mullins (who has since died) to invest the fund for the benefit of the infants during their minority, and declared that upon the termination of the homestead estate, the principal was to be applied to the three above-mentioned judgments. By decree of the June term, 1903, the case was removed from the docket with leave to reinstate it at any time within three years.

When the homestead expired on June 25, 1910, the firms of Tucker & Co., and Tucker, Smith & Co., formerly Baltimore merchants, had long since gone out of business, and

the members of the partnerships could not be located. Letters addressed to the firms in 1903 were returned unclaimed. The attorney who had formerly represented the firms made fruitless search for his clients, and testified that he had not heard of or from them in eight or ten years. E. G. Leigh, Jr., of the late firm of E. G. Leigh, Jr., & Co., of Richmond, also assigned his one-half of the judgment in favor of that firm to the widow. He disclaimed all interest in the other half of the judgment, and did not assert it against Penn's estate, but doubted his right, as surviving partner, to assign it; and, moreover, stated that his former partner was dead and the estate settled up.

In November, 1911, the widow and children of James C. Penn filed their bill against the firms of Tucker & Co., Tucker, Smith & Co., and the administrator and heirs of William H. Palmer, deceased, late member of the firm of E. G. Leigh, Jr., & Co., praying that the unclaimed fund of $281 be decreed to them. There was no appearance on the part of the defendants, and from a decree dismissing the bill this appeal was allowed.

The reason given by the circuit court for dismissing appellants' bill was that the decree in the partition suit was a final decree and operated automatically to apply the fund in question to the judgments to which it referred; and that this was true, although "the creditors to whom the court decreed the fund have not claimed it since the expiration of the homestead interest."

We do not so interpret the decree. The fund was placed in the hands of a receiver of the court for investment and administration. The receiver deposited it in his name in the Peoples' Bank of Martinsville, and the interest was paid to the guardian of the Penn children during their minority. The principal sum is still on deposit in the bank and is subject to the order and disposal of the court. It has never, in fact, been applied to the judgments of the de-

funct firms; and since the declaration in the decree of the January term, 1903, that it was to be so applied, it has been made to appear that such application is improper and impossible.

The foregoing summary of undisputed facts presents this situation: A final decree has been improvidently entered in the partition suit removing it from the docket before the rights of the parties with respect to the fund on deposit in bank had been adjusted and the money disposed of. The appellees had never appeared in the litigation, or in any way made demand either against the estate of the decedent or to the specific fund. The firms had long since passed out of existence, and the members could not be found. The deposit constituted an unadministered asset of the estate to which the appellants, as widow and children of the deceased, were indisputably entitled, and no one was authorized to withdraw the fund from the bank, and appellants could not collect it without the aid of a court of equity. The time had passed within which a bill of review could be filed, and under the practice in such case the remedy is by an original bill in the nature of a bill of review. *Fore* v. *Foster,* 86 Va. 104, 107, 9 S. E. 497, and authorities cited.

In 16 Cyc. 532, it is said: "Bills to impeach decrees for fraud or other like causes, while partaking in some respects of the nature of bills of review, are original bills, governed by general equitable principles." Citing *Kernan* v. *Trice,* 75 Va. 690.

In note 93, p. 533, this statement occurs: *"Bills in nature of bill of review.*—Any matter clearly showing that a decree is improper, although not obtained by fraud, collusion, or surprise, may be made the ground for impeaching the decree by an original bill in the nature of a bill of review. *Gregory* v. *Lenning,* 54 Md. 51; *Arnold* v. *Meyers,* 1 Lea (Tenn.) 308."

The bill in the present case comes within the principle laid down by the authorities, and the plaintiffs are shown to be entitled to the relief prayed for. The decree of the circuit court dismissing the bill must, therefore, be reversed, and the case remanded, with directions to withdraw the fund from the bank, and, after paying the costs of litigation, to distribute the residue among the widow and children of J. C. Penn, deceased, as their rights may appear.

*Reversed.*