LAWRENCE *v.* RAPAPORT.

1. LANDLORD AND TENANT — EVICTION — CHANGE OF STAIRWAY BY LANDLORD—INTERFERENCE WITH BENEFICIAL USE—THIRD PERSONS.

   Where a landlord, against the protest of his tenant on the second floor of a building, changed a stationary stairway from the first to the second floors into one that could be

raised and lowered, and the tenant on the first floor so used said stairway as to interfere with the beneficial use thereof by the tenant on the second floor, the landlord's connection with said change removes the case from the rule relieving him from responsibility for the acts of third persons.

2. SAME.

The transforming of said stationary stairway ·by the landlord, *held*, to deprive the upper tenant of the beneficial use of same at his will.

3. SAME—EVICTION—DEMAND FOR POSSESSION—COUNTERMAND.

To constitute a demand for possession during the term of a lease an eviction, the tenant must comply with the demand while it exists and vacate the premises under a standing order to do so, and he cannot justify under an order countermanded before he surrenders possession.

4. SAME—DEMAND FOLLOWED BY SURRENDER TERMINATES LEASE.

A demand made by the lessor and acceded to by the lessee in vacating the premises terminates the contractual relations of landlord and tenant, if the surrender of the premises is unconditional and consummated while the demand remains in force.

5. SAME—MERE ACQUIESCENCE INSUFFICIENT—FRAUDS, STATUTE OF.

If demand to vacate is made and assented to but no removal accomplished, the lease continues unimpaired, since acquiescence alone is insufficient to satisfy the statute of frauds.

6. SAME—MERE WORDS NOT AN EVICTION.

Mere words, no matter how offensive, and unwarranted demands cannot constitute an eviction, because the interference with the beneficial enjoyment of the premises must be something of a more permanent nature than a personal altercation between landlord and tenant or the making of a demand to which the tenant is not bound to accede.

Error to Kent; Perkins (Willis B.), J. Submitted January 6, 1921. (Docket No. 67.) Decided March 30, 1921. Rehearing denied July 19, 1921.

Assumpsit by Wilbur E. Lawrence against Jacob C.

Rapaport for rent.   Judgment for defendant.   Plaintiff brings error.   Reversed.

*S. Wesselius* and *L. W. Squier,* for appellant.

*John M. Dunham,* for appellee.

WIEST, J.   This is an action for rent of premises leased by plaintiff to defendant for 5 years from the 1st day of February, 1915, and vacated by the defendant before the end of the term.   Under the plea of the general issue defendant gave notice of an eviction. The issues were submitted to a jury and verdict found for defendant.   Defendant rented for the purpose of a retail clothing store the second floor at 222 Monroe avenue N. W., Grand Rapids, the premises having at the time of the commencement of the lease a front entrance stairway, and at the rear a stationary stair leading to the alley and used to carry up fuel and some express and freight packages and to take down ashes and refuse.   At the time defendant entered under the lease the lower floor of the building was let by plaintiff to another tenant and afterwards such lease of the lower floor was sublet by such tenant, with the consent of plaintiff, to one R. D. Carstens for use as a jewelry store.   Mr. Carstens having a jewelry stock on the first floor and desiring to protect the windows at the rear opening upon the alley placed steel shutters over them to be closed at night and opened during the day.   In order to install the shutters and permit them to be opened and closed it was found necessary to remove the stationary stair leading from the rear of defendant's store to the alley and fix the same so that it could be raised up out of the way by means of pulleys and weights, and that was done, but without the consent of defendant.   Thereupon trouble arose between defendant and plaintiff and the lower tenant and there is evidence in the case

that the shutters interfered with defendant's beneficial use of the stairs, preventing him at times from bringing up his fuel and express and carrying down ashes and refuse.

One of the issues at the trial was whether the change as made materially affected the use of the stairs when lowered; defendant claiming that the stairs were changed into a mere fire escape and rendered practically useless, and plaintiff claiming that the stairway was never more than a fire escape and was not changed except to be made to be raised or lowered.

Another issue involved trouble between the defendant and plaintiff over the use made by plaintiff of the front stairway culminating in plaintiff calling defendant abusive names, and the defendant claimed that the plaintiff ordered him to vacate the premises and he did so. Plaintiff denied ordering defendant to vacate the premises and claimed he ordered him to vacate upper rooms which defendant had not rented.

The plaintiff moved for a new trial which was denied. The assignments of error bring up the questions of whether there was sufficient evidence to go to the jury upon the claimed eviction and whether the defendant had a right to vacate if told to do so by the plaintiff, even though before he vacated plaintiff informed him he was laboring under a misapprehension and must not vacate the premises. Plaintiff insists that he is not to be held for any interference arising out of the acts of the lower tenant. The record discloses plaintiff's connection with the matter of the change in the stairway sufficient to remove the case from the rule with reference to the acts of third parties.

An eviction must be predicated upon the wrongful act of the landlord and those acting with his permission, and which results in an interference with the beneficial enjoyment of the use the tenant pays him

for. Here the lower tenant interfered with the upper one, and the landlord cannot, under the record herein, be heard to say that he is in no way responsible for the acts of the lower tenant. The landlord's covenant for continued beneficial enjoyment on the tenant's part does not, of course, make him guard the tenant against the wrongful acts of other persons, but does require him to see to it that the conveniences he has let for hire are not taken away or the beneficial use thereof interfered with by any one who cannot, and does not, act except under his permission. It is clear that there was serious interference with the means of ingress and egress established and in use at the time of the letting. To transform a stationary stairway available for use at will to one that lifts up and out of the way of the lower tenant and open to use at the will of the lower tenant deprived defendant of a beneficial use of the stairway at his own will.

Had the case been submitted to the jury upon the sole issue of an eviction based upon deprivation of beneficial use of a part of the premises we should not feel inclined to disturb the verdict of the jury. The issues, however, as submitted, went beyond this and brought into the case the question of whether the plaintiff ordered the defendant to vacate the premises and the right of the defendant, if so ordered, to consider it an eviction and to vacate. If plaintiff ordered defendant to vacate the premises, as claimed, and defendant wrote him that he would do so and before he did so the plaintiff informed him that he had not ordered him to vacate and he must not do so and he would be held to his lease, then there was neither an eviction nor surrender of the premises by the defendant nor a release from his tenancy. The demand, if made, that the defendant vacate, not being operative when he did vacate, cannot be considered an eviction, and could not relieve defendant from the obligation

to pay rent. To constitute a wrongful demand for possession a justification for leaving the premises, the tenant must accede to the demand and the surrender must be complete before a countermand of the order to move.

Plaintiff requested the court to charge the jury as follows:

"The defendant claims that the plaintiff ordered him to move, but does not deny that before he acted upon said order he was notified that he was mistaken as to plaintiff's intention by letter written his counsel. And I instruct you, gentlemen, that this order to move, if such there was, did not give the defendant the right to vacate the premises and cease paying."

The court charged the jury upon this subject as follows:

"Taking up the other question of fact, if you find, as a matter of fact that the defendant's claim is true that the plaintiff on this Saturday in January told the defendant, or notified the defendant, using opprobrious language in connection with such statement, that he should move out of the premises or his goods would be thrown out, and that the defendant within a reasonably short time did move out, in compliance with that request, the plaintiff cannot complain of it. It is claimed, and it has been argued, that after the receipt of the defendant's letter written on the same day and addressed to the plaintiff, the plaintiff, through his counsel, replied to the defendant, correcting his claim and statement as to what took place on that Saturday.

"As a matter of law, I instruct you that that letter came too late if the defendant is telling the truth, and you so find, as to what took place on that Saturday. If the plaintiff's claim is true, the defendant would not be justified in vacating the premises; he would have no claim or right under his lease to vacate the premises if the plaintiff's version as to what took place there is true, and you so find. But, on the other hand, if the defendant's version is true that the plaintiff told him to get out of the premises or he would throw him out, I instruct you that the defendant had a right to

take plaintiff at his word, if you find that language was used.

"Now, the burden of proof in this case rests upon the defendant to satisfy you, first, that by the change which was made in this stairway, his beneficial use of the premises was interfered with; secondly, that no act of his or delay on his part resulted in an acquiescence on his part in such change; and thirdly, that the language used by the plaintiff in January, 1918, was the language which he claims was used. To justify an eviction, he must establish either one or the other of these claims.

"Of course, if you should find by a preponderance of the evidence that this beneficial use of the premises was interfered with by a change of this stairway and that he did not acquiesce in such change under the evidence and the instructions I have given you, he would be entitled to recover; that is, he would be entitled to a verdict at your hands. And in the next place, putting that all aside, he would have a distinct and separate right to rely upon the transaction of January, 1918, if that took place as the defendant claims and you are satisfied by a preponderance of the evidence that it did take place as he claims, that would justify his removal from the premises; that in law would constitute an eviction and I so instruct you."

After being absent for a time the jury returned into court and asked this question:

"If Lawrence swore at Rapaport in his place of business in the presence of his employees and patrons, or either of them, would that justify Rapaport in vacating the premises?"

This question was answered by the court as follows:

"Not that alone."

The defendant testified:

"I sent a letter to him on January 26, 1918. I sent it after we had trouble on the Saturday afternoon when people were coming to make their payments. He had some beans laid across the stairway, one sack across the stairway and four or five sacks right up

against the pillar on the side.    I went out and I said to Mr. Lawrence, 'What about that?    You are always pulling this stuff off every Saturday.    When it ain't yourself, it is sending all your men up on the third floor.'    I went in the store and he came rushing in. I told him about the back stairway.    I says, 'You want your rent and you want your building.    I want that back stairway fixed, the stationary, iron stairway.'    He said, 'You God Damned dirty Jew, I have had enough of this; you God Damned dirty Jew, get the hell out of here, or I will throw you out.'    Then I sat down and wrote him this letter.    I told him I would get out."

Four days after he wrote the plaintiff that he would get out he leased other premises but did not vacate for some time.    The day of the above mentioned altercation defendant wrote the plaintiff as follows:

"GRAND RAPIDS, MICH., January 26, 1918.
"WILBUR E. LAWRENCE,
    "City.
"*Dear Sir:* Since you were down in our store the early part of the afternoon, I have been thinking over the dirty, insulting names you have called me and also what you said to me in regard to getting out and that you would throw all my fixtures from the third floor off your premises, also all the absurd language you have used before my employees and customers who were there at the present time, also that you desired me to throw up my lease and get out.    If my presence is so obnoxious to you, I will gladly accommodate you. I am now making arrangements to obtain another location and expect to be able to leave your building within the next two or three weeks, and since I am endeavoring to comply with your request, I ask that you make arrangements to turn over my lease properly canceled and I will pay you for any rent due up to the time I move.
    "Yours truly,
        "JACOB C. RAPAPORT."

On January 29, 1918, the plaintiff replied to defendant's letter as follows:

"GRAND RAPIDS, MICH., January 29, 1918.
"Mr. JACOB C. RAPAPORT,
    "222 Monroe Avenue,
        "City.
"*My Dear Sir:* Mr. Wilbur E. Lawrence has handed me your letter of January 26, covering some personal difficulties that you have had with him. Whatever these difficulties may have been they are not such as would violate the lease on your part or his, which you now have of these premises until February, 1920.

"Mr. Lawrence informs me that he has not desired you to throw up your lease and that he has accommodated you with storage room on the third floor of his building for which up to the present time he has charged you no rent and yet of course this is of value to you. If, however, any financial difficulty should arise between you this storage would have to be paid for at its value.

"As I said before nothing has occurred by which you have been released from your written lease covering the premises in question which your attorney will inform you if you will consult him.

"His verbal statement to you was to vacate the third floor for which you had not paid any rent and not the premises for which you have paid rent and for which you have a lease. I am giving you this information in order that you may know what Mr. Lawrence's position in the matter is and that you may also determine the extent of your liability in case you vacate these premises without his having released you from your written obligation.

"Mr. Lawrence desires, in order to avoid any further trouble, that you pay the rent at this office and send check for same payable to him or to myself on the first day of each month in accordance with the terms of the lease.
                "Yours truly,
                        "S. WESSELIUS,
                            "Attorney."

To constitute a demand for possession during the term an eviction, the tenant must comply with the demand while it exists and vacate the premises under

a standing order to do so, and he cannot justify under an order countermanded before he surrenders possession. A demand made by the lessor and acceded to by the lessee in vacating the premises terminates the contractual relations of landlord and tenant. There must, however, be an actual and unconditional surrender of the premises and consummated while the demand remains in force, or such change in circumstances occasioned the tenant by reason of the demand and arrangements made by him in accordance with the demand as would render it unjust to permit a countermand. Acquiescence, however, on the part of the tenant, even though expressed, will not be enough to remove the matter from the statute of frauds. If demand to vacate is made and assented to but no removal accomplished the lease continues unimpaired. The charge of the court left the jury to find an eviction by reason of what occurred on January 26th. Mere words, no matter how offensive, and unwarranted demands cannot constitute an eviction, because the interference with the beneficial enjoyment of the premises must be something of a more permanent nature than a personal altercation between landlord and tenant or the making of a demand that the tenant is not obliged to accede to. The court very properly charged the jury that there was no surrender arising out of the claimed demand for possession and took the question of surrender out of the case on the ground that there was no acceptance thereof. A demand by the landlord for surrender of the premises before the end of the term, requiring surrender in fact to release the tenant, cannot in law constitute an eviction; and it is not an eviction even though the tenant vacates in response to the demand, but no more than a voluntary surrender. *Boyd* v. *Gore,* 143 Wis. 531 (128 N. W. 68, 21 Ann. Cas. 1263).

The court was in error in permitting the jury to

treat the demand for possession accompanied by abusive language as an eviction. For this error the judgment is set aside and a new trial granted, with costs to appellant.

STEERE, C. J., and MOORE, FELLOWS, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.