## LATOWITZ *v.* TOMASZEWSKI.

1. LIFE ESTATES—EVICTION—REQUEST TO LEAVE.

   A mere request that life tenant leave the premises does not constitute an eviction.

2. CONTRACTS—LIVING QUARTERS—BREACH OF CONTRACT—VOLUNTARY DEPARTURE.

   Defendant's agreement to provide plaintiff with living quarters in the house he had deeded to defendant and her late husband and to bury plaintiff was not breached by plaintiff's departure from the home upon the return from the hospital of the husband, who was then paralyzed from an industrial accident, and of defendant herself with a newborn baby, where there is ample testimony that the grantees then implored plaintiff to stay.

3. EQUITY—JURISDICTION.

   Once equity assumes jurisdiction it will proceed to do what it must to accord complete equity and finally conclude the controversy.

---

REFERENCES FOR POINTS IN HEADNOTES

[2, 4] 12 Am Jur, Contracts § 389.
[5] 9 Am Jur, Cancellation of Instruments § 31.
  Remedy of rescission for grantee's breach of agreement to support grantor. 112 ALR 670.

4. Contracts—Promise to Bury—Breach of Contract.

> There can be no legal breach of condition to bury a person until the death of the promisee for whose benefit the contract was made.

5. Deeds—Setting Aside—Breach of Contract to Provide Living Quarters.

> Evidence presented in suit to set aside deed for failure to provide living quarters *held,* insufficient to justify decree for plaintiff on ground of breach of contract by reason of alleged eviction.

Appeal from Wayne; Murphy (George B.), J. Submitted April 15, 1958. (Docket No. 69, Calendar No. 47,336.) Decided September 9, 1958.

Bill by Max Latowitz against Bernice Tomaszewski, individually and as survivor of Edward A. Tomaszewski, her deceased husband, to set aside deed for breach of contract to provide living quarters. Decree for plaintiff awarding money damages. Defendant appeals. Reversed.

*Douglas Leo Patterson,* for plaintiff.

*Markle, Markle & Eubank (Richard G. Eubank,* of counsel), for defendant.

Voelker, J. During the depression of the 1930's the plaintiff Max Latowitz owned a mortgaged house in Detroit. By 1934 he had fallen 2 years behind in his mortgage payments and he sought out and prevailed upon the defendant and her husband to buy the property so that he would not lose it by foreclosure. At the time plaintiff was about 55 years old and in good health and lived in an unfinished, unheated attic room, renting the remainder of the house to others.

Plaintiff executed a warranty deed in the usual form to the defendants, Edward (deceased at time of this action) and Bernice Tomaszewski, who were

then approximately 22 and 20 years of age, respectively. The deed was promptly recorded by Edward. At the same time a separate agreement was executed by Edward and Bernice wherein they agreed to provide plaintiff with a room in the attic as long as he lived (or in their own home if they sold the property), and to pay his burial expenses when he died. The deed made no mention of the separate instrument or of any of the promises made therein. This agreement was not recorded with the register of deeds until the plaintiff did so on September 29, 1949, some 15 years after the execution and recording of the deed.

After the transfer of the property to them the defendant and her deceased husband paid up the mortgage and made substantial improvements to the property. They rented a portion of the property to others until 1944 when they themselves moved into it. In the meantime the plaintiff lived in his attic until 1945 when he left and moved into his sister's home. He later returned to his attic for a short while but left again, keeping his furniture and other personal effects therein until about 1951.

In this action plaintiff claims that there had been a breach of the agreement by the defendant and her late husband, and therefore a failure of consideration, and, hence, that the deed executed in 1934 should be cancelled and set aside and defendant should reimburse plaintiff for moneys spent for lodging elsewhere since defendant and her deceased husband breached the agreement by ousting him from his attic. The trial court found and ruled that there was such a breach of the agreement and gave money damages to plaintiff to the extent of $5,700 (including burial expenses), plus $300 attorney fees and costs.

In review of this case we deem the first and primary question to be answered is whether there

was any breach of the agreement.   In order to answer that question we must find the answer to a further question: did the evidence below support the plaintiff's claim of an eviction upon which his claimed breach of the agreement rested?

The only evidence supporting plaintiff's claim of eviction is his own unsupported testimony that the defendant Bernice Tomaszewski asked or ordered him out of the house.   That was his story and he stuck to it.   This was denied, however, by the defendant, and still other witnesses who appeared for the defendant (some of whom were related to plaintiff) testified that he was asked to stay.   There was also affirmative testimony that the real reason plaintiff left defendant's attic and moved to his sister's house was largely at the request of his sister and her daughter, so that the sister would not be left at home alone in the evenings following the daughter's planned early departure from the State.

For the purpose of this decision we may assume, without deciding, that plaintiff's unsupported testimony is true, and that he was in fact ordered to leave the premises by the defendant, Bernice Tomaszewski, as he claims and she denies.   Even if true, this is not sufficient to support his claim of eviction. We have held in Michigan that a mere request that one leave the premises does not constitute an eviction.   *Donald* v. *Faulds,* 302 Mich 331, citing an earlier case.   This view also finds support in an annotation in 14 ALR2d 1450, 1451, citing *Faulds* and the earlier case, as follows:

"There is some authority to the contrary, but the prevailing view would seem to be that a mere notice to the tenant to quit, followed by his vacation of the premises, is not of itself sufficient to constitute an eviction."

The case cited in *Faulds* (*Lawrence* v. *Rapaport,*
213 Mich 358) holds that an admitted order to quit
the premises by the landowner to the tenant which is
rescinded before the tenant has in fact vacated is
not an eviction.   Although we recognize that the
lease in the *Rapaport Case* represents the more nor-
mal landlord-tenant arrangement, we think the sit-
uation in the case before us, in which the plaintiff, in
effect, was given a lease on the attic room for life in
return for the consideration stated in the written
agreement, is no different in principle and is thus
subject to the same rule of law.

In the present case the proofs show that, what-
ever may have happened before, when the defendant
and her deceased husband had just returned from
the hospital—Edward paralyzed from an industrial
accident (from which he later died) and Bernice with
a newborn baby—they implored the plaintiff to con-
tinue to stay and live with them.   Instead he left,
that very night, and in these circumstances we do
not think his departure was the result of an eviction
under Michigan law.   Thus there was no breach of
the agreement on this score.

As noted, the trial judge in his decree included an
allowance for the claimed partial breach of the
agreement to bury the plaintiff—this doubtless on
the generally sound theory that when equity once
assumes jurisdiction it will proceed to do what it
must to accord complete equity and finally conclude
the controversy.   In view of our decision on the evic-
tion, however, we are afraid the entire award must
be set aside.   Taken alone as a ground for relief,
there can scarcely be any breach of the condition to
bury the plaintiff until he dies, and we suspect that
the police might become a little curious if the defend-
ant undertook to perform this condition before the
plaintiff expired.

In this case the plaintiff's proofs simply fail to support his case for equitable relief, and the added factors of elapsed time and the substantial improvements made by the defendant do little to change our view. We are aware that in some cases of this type equity has nevertheless allowed some measure of relief even though no actual breach was found to exist. A careful reading of those cases, however, will disclose residual and compelling equities which do not exist in this case. Here the plaintiff sought and got help when times were tough, and we do not think that years later he should be permitted to escape his own undertakings partially or completely on the slender proofs submitted. For a more complete discussion of this area of our problem, see *McLean* v. *Wortman,* 353 Mich 458.

The decree below must, therefore, be reversed and set aside and a decree dismissing the bill entered here, with costs to the defendant.

SMITH, BLACK, EDWARDS, and KAVANAGH, JJ., concurred with VOELKER, J.

DETHMERS, C. J., and CARR and KELLY, JJ., concurred in the result.