379 P.2d 409

Elmer E. CASEY and Myrtle Casey, husband and wife, Lewis W. Groom, and Lucille Groom, husband and wife, and Beth Biddick, a single woman, Plaintiffs-Respondents,

v.

NAMPA AND MERIDIAN IRRIGATION DISTRICT, Defendant-Appellant.

No. 9095.

Supreme Court of Idaho.

Feb. 25, 1963.

Anderson, Kaufman & Anderson, C. Ben Martin, Boise, for appellant.

Grant L. Ambrose, Meridian, Glenn A. Coughlan, Boise, for respondents.

McFADDEN, Justice.

The plaintiffs instituted this action seeking damages from the defendant for injury to their lands and for damages for loss of crops.

Plaintiffs Groom and wife are in possession of the real property, the subject of this action, which is situate a short distance west of Meridian. The Grooms, who are purchasing a portion of the property from Casey and wife, are leasing the rest of the property from plaintiff Biddick, and are farming both tracts. The defendant irrigation district is charged with negligently allowing water to overflow the banks of its

lateral known as the Rutledge ditch, onto the plaintiffs' lands, causing damage to the land for the years 1956, 1957, 1958 and 1959 of a permanent nature. Damages are claimed for crop injury on the Biddick property for the year 1959, and on the Casey-Groom property for the years 1959 and 1960. The jury awarded damages to plaintiff Biddick in the amount of $206.00 and to plaintiffs Casey & Groom for $856.30; judgment was entered accordingly. Defendant moved for a new trial, and upon denial of this motion, this appeal was taken from the judgment and from the order denying the new trial.

The Biddick and the Casey-Groom lands are adjoining. The Biddick land lies to the west of the Casey-Groom tract, and both tracts are bounded on the north by a county road, and on the south by the Union Pacific Railroad right of way. To the north of this right of way the defendant district owns the so-called Rutledge lateral or canal, from which the water overflowed. On the north bank of the canal there is an inspection and maintenance road. Next to the road, on its north, there is a field ditch used to irrigate the Biddick property. The Biddick property is bounded on the west by another county road. A low area or swale runs northwesterly across the fields, with its fall from the southeast to the northwest.

During each of the 1956, 1957, and 1958 irrigation seasons, the Rutledge lateral or canal overflowed onto about 3.7 acres of the Groom-Casey land, and 4 acres of the Biddick land. In 1959 the canal overflowed onto the same areas on two occasions. Moss had been allowed to accumulate in the canal causing the water level to raise, overflowing the banks, which, with the failure to properly maintain the canal and its banks, is charged as the negligence which caused the flooding and resultant damages. There is no question as to the fact of the floodings. However there is a difference of opinion between the defendant district and the plaintiffs as to the cause of the flooding, and whether the defendant district was negligent. It is sufficient to say that the record discloses ample evidence from which the jury could have found negligence on the part of the defendant district in allowing moss to accumulate and failing to maintain the banks causing the canal to overflow. While defendant contends that maintenance of the canal banks was made impossible by seepage from gopher holes along the Biddick field ditch, the jury, by its verdict, found against this contention of the defendant. There being evidence to sustain the verdict on the issues of negligence, it will not be disturbed by this court. Zenier v. Spokane International Railroad Co., 78 Idaho 196, 300 P.2d 494.

A more serious problem is presented, however, in resolving the issue presented by this appeal as to the sufficiency

of the evidence to sustain the amount awarded by the jury to the respective parties. Appellant assigns as error the refusal of the trial court to withdraw from consideration by the jury the issue of damage to the land of the parties. In Young v. Extension Ditch Co., 13 Idaho 174, 182, 89 P. 296, 298, this court stated:

> "If the land is permanently injured, but not totally destroyed, the owner will be entitled to recover the difference between the actual cash value at a time immediately preceding the injury and the actual cash value of the land in the condition it was immediately after the injury, with legal interest thereon to the time of the trial.
>
> "If the land is temporarily but not permanently injured, the owner is entitled to recover the amount necessary to repair the injury and put the land in the condition it was at the time immediately preceding the injury, with legal interest thereon to the time of the trial."

Plaintiff Groom testified that in his opinion his and the Biddick land was depreciated in value by at least $100.00 per acre as a result of the repeated floodings. He testified: "Well, it (flooding) would cause your land to get hard and cause it to sour. It caused slick spots to come up in the land." Plaintiffs' witness French testified that flooding deteriorates the land; "Well, it sours, it runs together and it tightens the soil down; —It runs together; it isn't as fertile." This evidence was sufficient from which the jury could reasonably have inferred that the damage to the land was of a permanent nature, and depreciated the value of the property.

As to the damages for injury to the crops on the lands of the respective plaintiffs the flooded land was all planted to wheat in 1959. The first flooding in 1959 was prior to the harvest of the wheat, and the second flooding was subsequent to the time the wheat was harvested. The effect of the flooding on the maturing wheat was described by plaintiff Groom:

> "The grain was just heading when the water hit it, and when the water came out on it in that area the grain just laid right down—
>
> "Well when the grain goes down, it can't fill, and what does fill will be little shriveled kernals; the grain can't blossom and fill, and there will be a big percent of the heads some of them won't have anything in them, and some of them will be half-filled, and those that are clear on the bottom, they won't have anything in them, and farther up on the top there will probably be some in those."

He further testified that the normal yield of wheat on the flooded area (4 acres on Biddick, 3.7 acres on Casey-Groom) was re-

duced twenty-five bushels per acre. The market value of the wheat was established by the sales slips of the wheat actually harvested and sold by plaintiff Groom from the remaining land.

■ This court is committed to the rule that the measure of damages for injury to a growing crop is the difference between the value of the crop actually raised upon the land and the crop which would have been raised upon it under normal conditions for the year in question, less the cost of maturing, harvesting and marketing such additional portion of the crop,—the difference in value between the probable yield and the actual yield, less the probable cost of placing the additional crop in a marketable condition and marketing it. Kingsbury v. Bacon, 38 Idaho 701, 224 P. 438; Mahaffey v. Carlson, 39 Idaho 162, 228 P. 793; Risse v. Collins, 12 Idaho 689, 87 P. 1006. The reasoning sustaining this rule is well stated in Kingsbury v. Bacon, supra, wherein total loss of crops are discussed:

"'* * * It stands to reason, however, that compensation for the injury is the end to be attained. In the natural course the crop would have matured and been harvested. It would then have had an actual market value. To award the owner such actual market value would more than compensate him for his loss, and such an award could not be sustained, because had the crop matured, the owner would have been put to the expense of harvesting it; the destruction of the crop obviated the necessity for this outlay. It would seem, then, that the value of a growing crop of wheat at the time of its destruction must be determined from evidence of the probable yield and the market value of the crop at maturity, less the probable cost of placing the growing crop in a marketable condition.''

In the instant action plaintiff Groom contends that all elements of proof were present, and that all costs of maturing, harvesting and marketing of the crop had been allocated to the crop that did mature and was harvested and sold. There was no evidence offered to support this contention. Were this the only element of damages, as was true in Kingsbury v. Bacon, supra, reversal of the judgment would be required. Here there was evidence of other damages.

■ Plaintiff Groom, on the Casey-Groom lands, not only planted grain in 1959, but also planted a nurse crop of clover. There would have been no yield from this nurse crop in 1959. But normally it would have matured during the 1960 crop season. He testified that in his opinion the anticipated yield would have been 2 to 3 tons per acre of hay, and 600 pounds of seed per acre during the 1960 season. However, this clover crop was not allowed to mature, for plaintiff Groom, after the second flooding of

the land in 1959, plowed the whole field of eleven acres planted to the nurse crop of clover, leveled it, and planted it to oats which matured and were harvested during the 1960 crop season. He had been unable to get straw off the flooded area. He testified:

"Well, when I couldn't take the straw off it smothered and killed all the clover on that four acres, so I proceeded to plough the whole eleven acres."

In explanation of his reason for plowing in the whole of the field he stated:

"Well, because it would necessitate farming two separate pieces of ground in the same field and would make it all short runs; I would have to bring a live ditch down across there to irrigate about 3.7 acres and I'd have to put in another ditch to carry my water off of my other crop, on out, so it wouldn't go onto that crop."

He also stated that in his opinion this was a good and farmerlike practice. The wisdom of this farm practice was substantiated by the testimony of Mr. French and Mr. Holaday. Plaintiff Groom submitted evidence as to the costs involved in this program, asserting that these items, together with the difference in the value of the crop between the clover and the oats for the crop season of 1960 were proper items for the jury to consider in arriving at the verdict it reached.

The court instructed the jury that:

"In fixing the amount of money which will reasonably and fairly compensate the plaintiffs, you are to consider that a person whose property is damaged must exercise ordinary care to minimize existing damages and to prevent further damage. If any loss results from a failure to exercise such care damages cannot be recovered for such loss."

Practically all courts recognize the obligation of a party to take such steps as would reasonably tend to minimize damages occasioned either by breach of contract or by tort, and that such party is entitled to recover the costs reasonably incurred in minimizing such damages or avoiding the consequences of the conduct of the other party. See: Christensen v. Gorton, 36 Idaho 436, 211 P. 446; 15 Am.Jur. Damages § 27; 25 C.J.S. Damages § 35. In the final analysis, the reasonableness of the method selected by the plaintiff here to minimize the damages, and expenses chargeable to the defendant were issues properly submitted for resolution by the jury.

The trial court outlined the issues between the parties in its order entered following a pre-trial conference. The items of damages claimed to have been incurred by plaintiff Groom in his attempt to mitigate the damages were not specially mentioned, in this order, but were outlined in detail in

the plaintiffs' answer to defendant's interrogatories, and thus proof of these items was material.

The jury by its verdict rejected the theory of full recompense for all items of expense of mitigation of damages, and awarded to the plaintiffs, Casey-Groom, a sum substantially less than prayed, and less than testified to.

■ Errors are assigned to the refusal of the trial court to give certain of defendant's requested instructions. Instructions Nos. 5, 6 and 7 requested by the defendant were predicated on the theory that a person is under an obligation to use ordinary care to avoid injury to his property, and failure to use such care would be negligence, which if it contributes to the cause of damages will preclude recovery. The theory was also presented that if the plaintiff had knowledge of the condition of the defendant's ditch and yet failed to act to convey away any overflow this too would bar recovery. These instructions confuse the theory of avoidable consequences or of the duty of a plaintiff to minimize his damages with the theory of contributory negligence. These two theories must be kept separate and apart. The distinction between these two has been considered in Dippold v. Cathlamet Timber Co., 111 Or. 199, 225 P. 202, which analysis is in accord with our views:

"The position of the defendant here on this branch of the case would forbid any recovery whatever and would count as a bar. * * * Contributory negligence and unavoidable consequences are two quite different things. The one is a bar to any action whatever, and must be stated as a defense. The other simply goes to the lessening of the damages caused by the acts of the defendant. Whether in all cases evidence on that point may be admitted under the general issues is not here decided. Contributory negligence acts concurrently with that of the defendant. They are synchronous in their operation. The carelessness or indifference of the plaintiff in the matter of lessening damages is successive and subsequent to the carelessness of the defendant. They do not take effect at the same time. The defendant's negligence has spent its force and is past. It is succeeded by that negligence of the plaintiff which causes an enhancement of the damages. The two are not to be confounded, although in some instances the result—that is, the obliteration of damages—may be almost identical."

See also: 81 A.L.R. 282; 15 Am.Jur. Damages § 27; 25 C.J.S. Damages § 32; 65 C.J.S. Negligence § 135. The trial court instructed the jury as to the duty of the plaintiff to minimize the damages, and refusal to give these instructions are not error.

Error is assigned to the court's refusal to give defendant's requested instruction No. 8, which dealt with the duty of a person to minimize damages. The last sentence of this requested instruction read: "Where means are available whereby the owner of land or crops could at moderate cost have avoided damage from the flooding which had occurred, by conveying away the water in a ditch or ditches, whether such means was adopted or not, such expense is the owner's measure of the damages." To have so instructed the jury would have been error, for it would have ignored the rule that it is the jury's province to determine whether or not under all the circumstances it would be reasonable to expect the owner to mitigate by performing certain acts, i. e., what an ordinarily prudent man would do under like circumstances. Bader v. Mills & Baker Co., 28 Wyo. 191, 201 P. 1012. It likewise ignored the proposition that the means not only must be reasonable under the circumstances, and could be accomplished at reasonable cost, but also they must be within the ability of the owner. Gainer v. Storck, 169 Cal.App.2d 681, 338 P.2d 195.

The other assignments of error have been examined and no prejudicial error is evident.

Judgment affirmed.

Costs to respondents.

KNUDSON, C. J., and McQUADE, TAYLOR and SMITH, JJ., concur.