620 P.2d 276

Joe LAMB and Priscilla Lamb, husband and wife, Plaintiffs–Appellants,

v.

J. T. ROBINSON and Marguerite Robinson, husband and wife, Defendants–Respondents.

No. 12991.

Supreme Court of Idaho.

Oct. 24, 1980.

Rehearing Denied Dec. 23, 1980.

Ronald G. Carter of Carter, Gines & Rice, Boise, for plaintiffs–appellants.

Herman E. Bedke of Nielson & Bedke, Burley, for defendants–respondents.

THOMAS, Justice, Pro Tem.

On March 26, 1974, Joe Lamb and Priscilla Lamb, husband and wife, (plaintiffs–appellants, hereinafter referred to as Lamb), as lessors, entered into a written lease with J. T. Robinson and Marguerite Robinson, husband and wife, (defendants–respondents, hereinafter referred to as Robinson), as lessees, involving approximately 800 acres of farm land near Mountain Home, Idaho. Under the lease, Robinson contemplated growing approximately 400 acres of potatoes and 400 acres of wheat. The lease called for a cash rental per acre for the

different crops. Among other provisions the lease required Lamb, as lessor, to furnish "water, power, the pumping equipment and the pipe line for the proper irrigation..." of the land leased. It was also contemplated under the lease that Lamb would "use his best efforts to obtain circle type irrigation equipment to cover approximately 360 acres of the approximate 860 acres which this lease covers."

Lamb, as lessor, had on the leased premises a sprinkling irrigation system consisting of hand lines, main line, and additional equipment. Robinson, the lessee, however, preferred to have a pivot or circular type system and he prevailed upon Lamb to make efforts to obtain such a system. Shortly after the lease was signed the parties together contracted with a third party supplier for delivery of two pivot systems. An order was also placed with the power company to provide the electricity to the pumps.

The land had never been cultivated. It had been cleared of sage brush and planted to crested wheat grass. Robinson prepared the ground and planted the wheat during the month of April, 1974. Subsequently, a series of machinery malfunctions or mishaps occurred depriving Robinson of equipment sufficient to provide enough pressure to adequately furnish water to the hand lines to irrigate the wheat. Thereafter the potato ground was prepared and the potatoes were planted in what Robinson called "dust." Although water was in the creek flowing past the property from which the hand lines were fed, due to lack of pumping equipment, no pre–irrigation water was supplied to the ground prior to planting the potatoes, and none was available to the potatoes until after the planting was completed or until after May 25, 1974, at which time Lamb furnished a diesel engine attached to a generator, motor and pump. Meanwhile, due to the mechanical malfunctions or mishaps mentioned, the wheat appeared to be suffering from lack of water. After extensive negotiations between the parties, the lessor, Lamb, ultimately took back the wheat crop in lieu of rental of the wheat land. Robinson continued to cultivate and attempt to produce a crop of potatoes. Whereas both parties contemplated that the pivot sprinkling system would be in place and ready to perform in the forepart of June, it was not until July 4 or 5 that such system was put into operation. There was evidence it was not until August that the water had penetrated the ground sufficient to meet the root zone of the potatoes thereby sustaining the growth of the crop.

Lamb filed suit against Robinson seeking damages in connection with the crop of grain and for other work that Lamb had done for Robinson. Robinson counter–claimed against Lamb for damages to his potato crop. The court found that Lamb had sustained no damage to his grain crop which could be attributed to Robinson and made an allowance to Lamb for services performed and for other miscellaneous charges. The court further found that Robinson could have reasonably expected a crop yield of approximately 300 sacks of potatoes per acre; that the harvest yielded approximately 173 sacks per acre by reason of Lamb's failure to provide a sufficient irrigation system; that Robinson had contracted all of his potatoes at a price of $4.00 per sack and awarded damages to Robinson as lessee on his counter–claim in an amount of $193,751 after deducting the offsets due Lamb for his claims. From this judgment Lamb has appealed.

At the outset it should be observed that the appellants' brief is markedly lacking in compliance to the rules set down by this Court for appellant procedure. However, the Court can glean that the appellant appears to have assigned two matters as error: one, that the trial court erred in holding the plaintiff–appellant breached the lease in failing to furnish an adequate irrigation system; two, the trial court erred in awarding damages to defendant–respondent for crop loss on farm land which had never been cultivated prior thereto.

Since the latter issue as to damages is determinative of the matter at this stage, we choose to consider that issue first. Appellant Lamb urges that the rule barring

evidence of damages for lost prospective profits from a business which is not established, but one merely contemplated, should apply in the instant case where the alleged damages are for lost crops from land which had not been heretofore cultivated. *H. J. Wood Co. v. Jevons*, 88 Idaho 377, 400 P.2d 287 (1965); *C. R. Crowley, Inc. v. Soelberg*, 81 Idaho 480, 346 P.2d 1063 (1959); *Head v. Crone*, 76 Idaho 196, 279 P.2d 1064 (1955).

■ The general rule is:

"profits which would have been realized if a contract had been performed may be recovered as damages for its breach, provided they are susceptible of being ascertained with reasonable certainty and their loss may reasonably be supposed to have been within the contemplation of the defaulting party at the time the contract was made as a probable result of its breach." 22 Am.Jur.2d, Damages, § 174, p. 246.

In commenting on this rule this Court has previously indicated that damages need be proved only with reasonable certainty or, in other words, that the existence of damages must be taken out of the realm of speculation. *Anderson & Nafziger v. G. T. Newcomb, Inc.*, 100 Idaho 175, 595 P.2d 709 (1979); *Big Butte Ranch, Inc. v. Grasmick*, 91 Idaho 6, 415 P.2d 48 (1966).

■ Furthermore, it is basic law that contractual damages for lost profits must have been within the contemplation of the parties. *Hadley v. Baxendale*, 9 Ex. 341, 156 Eng.Rep. 145 (1854). In this connection the lease involved in this case provides as follows:

"If the lessor's negligence causes the irrigation system to be insufficient to irrigate the entire 860 acres, more or less, then there shall be a prorate reduction in the rental price of the property.

"If there is any crop loss whatsoever, it shall be the responsibility of the lessee."

If these provisions are suggestive of what was in the minds of the parties at the time the lease was entered into, it appears that the provisions are subject at least to the interpretation that any loss of crops should be the responsibility of the lessee, obviously placing upon the shoulders of the lessee or the man who raised the crops the ultimate burden of responsiblility, except where the lessor's negligence contributed to such loss. If the lessor's negligence contributed to the irrigation system being insufficient, then the damages should be a pro-rate reduction in the rental price of the property. (All rentals have been fully settled between the parties.) This is a measure of damages much different than the loss of profits for which defendants sought recovery under the counter-claim.

■ Since it appears that the issue of lessor's negligence was not considered and that perhaps the incorrect measure of damages was applied, it is necessary to remand this case to the district court to make determination as to what damages were contemplated by the parties in the event of a breach and whether or not the negligence of the lessor contributed to the insufficiency of the irrigation system, the trial court having made a specific finding that the irrigation system was insufficient.

On remand, if it is found that the lease does not provide the controlling measure of damages, it should be considered whether evidence of damage should be barred as being too speculative (as urged by appellant) or whether another measure such as that set out in *Casey v. Nampa and Meridian Irrigation Dist.*, 85 Idaho 299, 379 P.2d 409 (1963) is applicable. *Casey* held:

"[T]he measure of damages for injury to a growing crop is the difference between the value of the crop actually raised upon the land and the crop which would have been raised upon it under normal conditions for the year in question, less the cost of maturing, harvesting and marketing such additional portion of the crop,—the difference in value between the probable yield, and the actual yield, less the probable cost of placing the additional crop in a marketable condition and marketing it." 85 Idaho at 304, 379 P.2d at 411.

*Casey* cited with approval *Kingsbury v. Bacon*, 38 Idaho 701, 224 P. 438 (1924), wherein

total loss of crops were discussed: "[T]he value of a growing crop ... must be determined from evidence of the probable yield...." 85 Idaho at 304, 379 P.2d at 412.

Additionally, the district court's findings as regards the insufficiency of the irrigation system should be clarified. The appellant has raised the issue that the insufficiency of the system was not in the quantity of water available to be placed on the land, but the manner in which the water was distributed, that is, that the water as applied would run off and not penetrate, and that only when it was applied properly would it effectively accomplish the results the parties desired. Whereas the trial court made a finding that the irrigation was insufficient for a proper irrigation practice, a specific finding should also be made as to what would be a proper practice in the application of the water.

Reversed and remanded for further proceedings consistent with this opinion. Costs to appellants.

DONALDSON, C. J., McFADDEN, J., and SCOGGIN, J. Pro Tem., concur.

BISTLINE, Justice, dissenting.

The Court not only reverses the trial judge on issues which were not raised on the appeal, but on issues which were not raised at trial in the district court.

The only issues raised on appeal, according to the appellants' brief, are three:

## I.

"Lamb did not breach his contractual duty. In fact, he more than adequately performed as per the lease and within the contemplation of the parties.

## II.

"Robinson has not shown by any convincing evidence that a lack of water was the proximate cause of his low crop yield.

## III.

"Since the land in question had never previously been farmed, Robinson's measure of damages is unsubstantiated. Respondent has not shown beyond conjecture that he suffered any damage as a result of late delivery of water."

As is self–evident, the appellants' challenge to the trial court determination rendered against them is predicated wholly on claimed insufficiency of the evidence as to proximate cause of respondents' damages, and claimed insufficiency and incompetency of the respondents' proof on damages suffered. Appellants' brief argues these contentions; appellants' oral argument in turn was but an oral presentation of the contents of their brief. Respondents in their brief point out that appellants have made "no objection to specific findings of fact by the trial court," and that the brief of appellants argues their contentions "without reference either to specific findings or the transcript." Respondents in their brief set forth eleven findings [1] made by the trial court upon which appellants' liability was predicated, none of which is attacked or given any specific attention by appellants. Respondents conclude their brief with the statement that "[a]ll findings of fact and conclusions of law are substantiated by the evidence and the law and should be upheld by this court." [2] The Court's opinion, however, does not reach a determination of the issues as presented, other than to cite several cases cited by respondents, and to quote the general rule as found in 22 Am.Jur.2d, *Damages* § 174 at 246 (1965).

1. Appended hereto are the trial court's amended findings of fact and conclusions of law which well serve to illustrate both the issues presented and the court's carefully drawn findings thereon.

2. At the commencement of the trial the trial court advised counsel that both parties would be entitled to submit briefs at the conclusion of the trial, and both parties would be entitled to submit proposed findings of fact which were believed to be substantiated by the evidence. Presumably both parties did so. The trial judge made and entered his own findings and conclusions four months after the trial concluded.

Strangely, from there the Court turns to and quotes two paragraphs of the lease which are given no mention whatever in the briefs of the parties:

> " 'If the lessor's negligence causes the irrigation system to be insufficient to irrigate the entire 860 acres more or less, then there shall be a prorate reduction in the rental price of the property.
>
> " 'If there is any crop loss whatsoever, it shall be the responsibility of the lessee.' "

From there the Court digresses into speculation as to the possible effect of those provisions upon the issue of damages:

> "[I]t appears that the provisions are subject at least to the interpretation that any loss of crops should be the responsibility of the lessee, obviously placing upon the shoulders of the lessee ... the ultimate burden of responsibility, except where the lessor's negligence contributed to such loss. If the lessor's negligence contributed to the irrigation system being insufficient, then the damages should be a pro-rate reduction in the rental price of the property.... This is a measure of damages much different than the loss of profits for which defendants sought recovery under the counter-claim."

From there the Court muses that "it appears that the issue of lessor's negligence was not considered and that *perhaps* the incorrect measure of damages was applied ...," necessitating reversal and remand for a new trial which will comport with the manner in which the Court believes the case should have been tried. (My emphasis.)

The trial judge, however, did not decide the issues on the basis that appellants' *negligence* was the cause of the insufficiency of the irrigation system. In a manner most specific, and hence commendable as well, the trial court's conclusion of law no. 5 was couched in terms of appellants' breach of the agreement:

> "5. That plaintiff breached the terms of Plaintiff's Exhibit 1 in failing to repair

the canal so that the maximum amount of water could be stored in the reservoir, in failing to timely provide for the pumping equipment to enable defendant to pre-irrigate the potato ground, in failing to provide adequate pumping equipment on the wheat ground, and in failing to provide adequate pumping equipment to irrigate the potato ground until July 4, 1974."

My reading of the respondents' counterclaim discloses that they made no claim of negligence against the appellants. After alleging the very acts of which the trial judge found the appellants guilty, respondents with particularity alleged that:

> "By reason of the plaintiffs' *intentional* acts of refusing to prepare the inlet to the reservoir, delaying in repairing or replacement of the necessary pump equipment, and their failure to furnish adequate sprinkling equipment for the raising of the potatoe crop, the defendants' potatoe crop has been damaged in the amount of $320,000.00, which said damages should be paid by the plaintiffs to the defendants."

As for the statement, found in a single paragraph, that "[i]f there is any loss whatsoever, it shall be the responsibility of the lessee," apparently it must have been the thought of the parties that crop loss as to mechanical failures and as to insufficiency of the system having been given special attention, crop loss from other sources [3] would indeed be the responsibility of respondents. Obviously the "lessors negligence" clause had to do with, and only with, any insufficiency of the system. That this is so reasonably follows from the fact that appellants in filing their pleading responsive to the counterclaim did not seek to stand on the sentence in question, nor does it appear to have been an issue relied upon at trial, and for certain is not an issue that was raised or argued in this Court.

Feeling that the Court today does much mischief in its disposition of this case on an

**3.** Other causes of crop loss in the "whatsoever" classification might include fire, hail, wind, flood, locusts, and crop disease.

unpleaded, unraised and untried issue, and observing that the parties themselves in the first instance, their counsel in the second, and the trial court in the third, had a better opportunity for understanding the theories upon which the parties litigated than does this court, I respectfully dissent.

## APPENDIX

### FINDINGS OF FACT

"1. That this court has jurisdiction of all parties herein and of the subject matter of this lawsuit.

"2. That on the 26th day of March, 1974, plaintiff and defendant entered into a written Farm Lease whereby defendant–lessee was to operate approximately 860 acres under sprinkler system in the County of Elmore, State of Idaho, for the cropping season of 1974 on lands as set out in Plaintiff's Exhibit 1.

"3. That this original lease, on page 1, paragraph 3, provided in part as follows:

" 'All the lands above to have the water that is necessary for their irrigation to the full extent thereof if necessary, as it comes from the reservoir which normally waters said lands and the other water rights appertaining thereto.'

"4. That said lease provided for the payment of cash rent by defendant–lessee to plaintiff–lessor in the sum of $125.00 per acre on the potato ground and in the sum of $100.00 per acre on wheat (grain) ground.

"5. That said lease further provided, on page 3, paragraph 3, as follows:

" 'The lessor agrees to furnish the water, power, the pumping equipment and the pipe lines for the proper irrigation and said equipment shall be in good condition for that purpose. The lessor shall also provide the fuel to operate said irrigation system. The lessee shall be entitled to the first rights to all of the water which normally irrigates the acreage he is leasing, to use as he sees fit. If there is any excess water after the lessee has received all of his needs, then the lessor may use the excess water, with the lessees permission, to irrigate the rest of

the ranch which is known as the Bennett Creek Home Ranch. As regards to the irrigation system, the lessor will install a water gate on the large reservoir which will open and close in order that no water will be unnecessarily lost. At the end of the 1975 crop year, the lessor will build a new structure which opens and closes in order that no water in the reservoir will be wasted unnecessarily.' "

"6. That said lease, on page 3, paragraph 4, also provided as follows:

" 'The lessor will use his best efforts to obtain circle type irrigation equipment to cover approximately 360 acres of the approximately 860 acres which this lease covers. It is understood that the lessor is presently obligated to purchase an irrigation system which does not have the rain circle type irrigation equipment. It is also understood that should the lessor not be able to obtain replacement rain circle type irrigation equipment to replace the present system, he is contracted for, in an economic manner, he will not be obligated to install the rain circle type irrigation equipment to cover said 360 acres.'

"7. That upon the execution of this lease, the defendant entered upon the ground and commenced preparing his wheat (grain) ground for planting and timely planted approximately 400 acres of this ground in wheat. This wheat sprouted and made a good stand of wheat.

"8. That plaintiff–lessor furnished a diesel engine to generate the electricity to pump water onto the wheat ground on May 5, 1974. When the pump was installed, the diesel motor would only generate enough power to operate approximately 50% of the handlines necessary to provide adequate water for the production of a fully mature crop of wheat.

"9. That in the middle part of May, 1974, the wheat started to burn and suffer from lack of water and in the first week of June, 1974, plaintiff and defendant orally agreed that plaintiff should take over the wheat ground and take three–fourths of the crop therefor in lieu of rent and give to the defendant one–fourth of the crop.

"10. That under this arrangement plaintiff operated the wheat ground and irrigated the same for approximately one week after which he refused to do anything further, and defendant undertook at that time to irrigate the wheat crop.

"11. That on June 25, 1974, (not July 25, 1974, as reflected on the memorandum), plaintiff and defendant entered into a Memorandum Agreement, Plaintiff's Exhibit 2. By that agreement plaintiff agreed to take all the wheat (grain) crop, in lieu of rent. Plaintiff would also get one more "grain watering" on the wheat, in the event it was determined that there was sufficient water in the reservoir for that irrigation. The agreement also provided that the rent for 1974 was paid in full on the "potato land".

"12. That plaintiff irrigated the wheat ground and crop for approximately six days at which time it was determined by defendant that there would only be sufficient water left in the reservoir to irrigate the potatoes. Pursuant to the original lease, defendant demanded all the remaining water for his potato crop.

"13. That the wheat (grain) crop harvested by plaintiff yielded approximately 12 bushels per acre.

"14. That during the last part of April, 1971, and the first part of May, 1974, defendant started ripping the potato ground, which was new ground that had never been planted or irrigated. He also disced said ground and prepared the same for planting. Defendant planted most of his potatoes in the dust.

"15. That prior to planting the potatoes defendant had soil samples taken, had the soil analyzed and had fertilizer furnished and applied in sufficient amounts to have raised a maximum crop of potatoes of approximately 350–400 sacks per acre.

"16. That plaintiff promised to repair the reservoir prior to April 15, 1974, in order to store its maximum capacity of water. Plaintiff did not do so and by April 15, 1974, the water in the reservoir had diminished approximately six vertical feet.

"17. That plaintiff agreed to furnish water to defendant from Bennett Creek as it passed the reservoir and that all during the month of May, 1974, water flowed by the land in question without being utilized for irrigation.

"18. That plaintiff did not produce or furnish any pumping equipment to water the potatoes until May 25, 1974, at which time he furnished a diesel motor to pump water on the potatoes. Shortly thereafter, it ceased to operate and was replaced a few days later. The replacement pump would only irrigate approximately seven three-quarter lines of sprinkler systems, which was less than half of the water necessary to properly irrigate the potatoes at that time.

"19. That the pumping equipment was not installed in sufficient time to properly pre-irrigate the potato ground and most of the potatoes were planted in the dust.

"20. That the potatoes sprouted and came up and were a good stand, but defendant was unable to properly irrigate the potatoes and get the root zone wet because the pumping equipment furnished was wholly insufficient, and for the further reason that the ground had not been pre-irrigated prior to planting.

"21. That plaintiff purchased and was finally able to have installed the circular sprinkling system that would irrigate approximately 350 acres of potatoes by July 4, 1974. Idaho Power also hooked up the electricity to run the electric motor on the said sprinkling system at that time.

"22. That the circular sprinkling system was placed in operation and after the "bugs" were worked out, it operated satisfactorily for the rest of the season. However, since the ground was so dry, the root zone of the potatoes did not have adequate moisture until some time in August, 1974.

"23. That the potatoes suffered from lack of water from the time they were planted until the middle of August, 1974.

"24. That 300–400 sacks of potatoes per acre is a good crop in the State of Idaho, an average yield in Idaho being 250 sacks per acre. That the potato crop of defendant

should have yielded 300 sacks per acre with proper irrigation.

"25. That defendant harvested an average of 173 sacks per acre on the potato ground. The potatoes should have yielded 300 sacks per acre, making a loss per acre of 127 sacks.

"26. That the potatoes grown by defendant were contracted to Magic Valley Potatoes for $4.00 per hundred weight. That the cost of hauling the additional potatoes was $.08 per hundred weight.

"27. That the net damage to defendant's potato crop from lack of water is $199,136.00. Said amount was computed as follows:

```
Expected yield            300 sacks per acre
Actual yield             -173 sacks per acre
Loss per acre             127 sacks per acre
Number of acres          x400
                       50,800 total sacks lost
Price per sack           x4 00
Gross damage        $203,200 00
Less.   50,800
        x$.08
     $4,064.00 for
            hauling
                      -4,064 00
Defendant's net loss: $199,136 00
```

"28. That defendant verbally agreed to pay a reasonable consideration for the use of certain items of plaintiff's property. Furthermore, plaintiff proved certain damage caused by defendant as set out below. The following are those items not paid for, but used by defendant or those items damaged by defendant. The amount following the item is the amount agreed upon, or a reasonable amount, for defendant's use or damage to that item:

```
 1.  Grain drill            $    350.00
 2.  Tractor rental            1,000.00
 3.  Two sections 12-inch
     main line                    80.00
 4.  Sixty fence posts            60.00
 5.  Use of ditcher               80.00
 6.  Sunday labor                250.00
 7.  Destruction of pipe
     trailer                     550.00
 8.  Welding rod in shop          50.00
 9.  Rent of fuel tanks          125.00
10.  Truck rental, one day       150.00
11.  Hand-line damage, twenty-six
     sections, two hand-lines
     unrepairable              1,040.00
12.  Bridge destruction        1,100.00
13.  Mexican labor               550.00
              TOTAL      $ 5,385.00
```

"29. That the bean crop in question was grown by plaintiff's sons.

"30. That there was no damage to plaintiff–lessor's remainder interest at the termination of the said lease.

"31. That defendant has paid in full the rent on the potato ground.

## CONCLUSIONS OF LAW

"1. That this court has jurisdiction of all parties and subject matter of this lawsuit.

"2. That the Farm Lease entered into on March 26, 1974, was a binding and enforceable agreement between plaintiff–lessor and defendant–lessee.

"3. That the original lease was amended by Plaintiff's Exhibit 2, acknowledging that the cash rent from the potatoes was paid in full and that the wheat (grain) crop was accepted in lieu of any cash money provided for in the original lease (Plaintiff's Exhibit 1).

"4. That plaintiff received all the water that he was supposed to receive and suffered no damage to the wheat crop for which the defendant must respond.

"5. That plaintiff breached the terms of plaintiff's Exhibit 1 in failing to repair the canal so that the maximum amount of water could be stored in the reservoir, in failing to timely provide for the pumping equipment to enable defendant to pre–irrigate the potato ground, in failing to provide adequate pumping equipment on the wheat ground, and in failing to provide adequate pumping equipment to irrigate the potato ground until July 4, 1974.

"6. That as a result of the breach of lease by plaintiff, defendant–cross–claimant suffered crop damages on his potatoes in the sum of $199,136.00.

"7. That defendant met his burden of proof as to his counterclaim for damages against plaintiff. Plaintiff, however, did not meet his burden of proof as to his complaint for damages relating to the wheat crop or to the bean crop. Plaintiff did meet his burden of proof in establishing the sums owed plaintiff by defendant as per Finding of Fact # 28 regarding the use by defendant of plaintiff's equipment and the establishment of certain damages caused by defendant to plaintiff's property.

"8. That plaintiff is entitled to a set–off in the sum of $5,385.00 for defendant's use of plaintiff's equipment and for certain damages caused by defendant.

"9. That defendant is entitled to a judgment against plaintiff on defendant's counterclaim for $199,136.00, less $5,385.00, for a total sum of $193,751.00.

"10. That defendant is also entitled to costs, including a reasonable attorney's fee, as per I.C. 12–121, in the amount of $7,421.55.

"DATED this 6th day of April, 1978."