659 P.2d 107

**CIRCLE C RANCH CO.,**
**Plaintiff-Respondent,**

v.

**Paul JAYO and Gladys Marie Jayo,**
**husband and wife,**
**Defendants-Appellants.**

**No. 13296.**

Supreme Court of Idaho.

Feb. 17, 1983.

John Reid Tait, Lewiston, for defendants-appellants.

Michael T. Spink, of Clemons, Cosho & Humphrey, Boise, for plaintiff-respondent.

McFADDEN, Justice, Retired.

This appeal arises out of an alleged breach of a provision in a lease agreement to transfer a forest service 300 head grazing permit. Plaintiff-respondent Circle C Ranch Company initially instituted this action in district court seeking forfeiture of the lease it had with defendants-appellants Paul and Gladys Jayo alleging they were in default on their first annual payment. Jayos answered, contending there was no default in the first payment and filed a counterclaim against Circle C for damages suffered when Circle C refused to transfer certain grazing permits incidental to the lease. A motion for summary judgment as to the forefeiture issue was filed by Circle C. The Jayos opposed this motion and filed their own summary judgment motion supported by affidavits and exhibits. The court held that Circle C was not entitled to forfeiture of the lease agreement and set the case for trial on the Jayos' counterclaim.

Following trial the court entered its opinion containing findings of fact and conclusions of law. Therein, in summary, the court found that in June 1975 the Jayos began negotiations for the purchase of certain ranch property from respondent Circle C which ultimately resulted in a November 1975 lease with an option to purchase. The lease provided for annual rental payments over the five-year term, with an option to purchase to be exercised by December 1980.

The subject of the lease was the Maynard Ranch, a 4,390 acre expanse located between the Snake and Salmon rivers in Idaho County. The value of this ranch was enhanced by the availability for grazing of contiguous government owned grazing lands, the use of which was conferred by leases and permits, held by Circle C. The lease dealt with these permits in the following provision:

"It is understood and agreed by and between the parties that there exist certain grazing permits incidental to the premises conveyed hereby. Lessor covenants and agrees to execute any and all documents necessary to effect the transfer of those permits."

Grazing rights associated with the Maynard Ranch transfer included a Bureau of Land Management grazing permit, a state grazing lease, and two forest service grazing permits—one for 300 head of cattle and the other for 252 head. Both forest service permits were for use of forest service land known as the Pittsburg grazing allotment and were "term" permits.[1] The only grazing permit at issue on this appeal is the 300-head forest service grazing permit.

The trial court found that Jayos planned to use the 300 head permit for 300 head of their own cattle which they would bring down from Priest River. Because this plan would mean Jayos would exceed the 300 head upper limit (because of their use of the other, 252-head permit), Mr. Jayo proposed transferring title to the 300 head of cattle

---

1. Under forest service range management regulations there are two types of permits: "term" and "temporary." 36 C.F.R. § 232.3 (1975). A temporary permit is allowed for a period not to exceed one year (but may be renewed at the end of the year), while a term permit is usually issued for a minimum of ten years. According to the testimony of Bruce Dreher, a forest service employee, term permits require that the permitee own both the livestock to be grazed and land that would qualify as "base" property for the permitted livestock. The base property requirement is evidently intended in part to ensure an adequate location and feed source to maintain the livestock when they are not on government land. A temporary permit does not require ownership of the base property, but only of the livestock. The forest service also imposes a 300 head limit, applicable to both types of permits, for any one owner of livestock. This means that no single owner may graze more than 300 head of cattle on forest service land at any one time.

According to a letter from a forest service official to Mr. Jayo which was admitted into evidence, although the forest service will authorize temporary permits, it prefers term permits, and its regulations will not allow use of temporary permits for an indefinite or extended period of time.

to his sons, doing business as Jayo Brothers.[2] The proposal was discussed with and accepted by the forest service range management people and Circle C. Thus, in November, 1975, arrangements were made to enable the Jayos to graze 552 head of cattle on the Pittsburg allotment.[3] At trial, Mr. Jayo testified that he intended to use the forest service lands for the combined 552 head of cattle belonging to him and his sons in order that the Maynard Ranch remain available for subleasing and grazing of other cattle.

The trial court found that because Circle C would not waive its right to the 300-head permit for the 1976–77 and 1977–78 grazing seasons, Jayos could not run their 300 head of cattle on forest service land and consequently were compelled to use the Maynard Ranch property for that purpose, which made it unavailable for lease.

Regarding the Jayos' entitlement to the 300-head permit for the two grazing seasons, the district court found:

> "22 .... This issue was strongly contested and the evidence as to the parties' intentions was highly contradictory, but it is the court's opinion that JAYOS have met their burden of proving they were entitled to use the 300 head permit during the term of the lease.
>
> ....
>
> 42. The court finds that as between the parties to this action, JAYO was entitled to use the 300 head permit as well as the 252 head permit, so long as the lease agreement was in good standing."

In spite of its finding of Jayos' entitlement to the grazing permits, the district court denied their claims for damages as being too speculative and not adequately supported by evidence. The Jayos appealed, alleging error on three points: (1) that the trial court erred in concluding that the Ja-

yos' ability to obtain a temporary grazing permit was speculative, (2) that the court erred in concluding the Jayos' claim for loss of rental income was speculative, and (3) that the court erred in denying the Jayos damages, or in the alternative a new trial, on their claim for the value of hay lost because of the permit denial.

## I

There are two different claims for damages—lost rental profits and lost hay—for two different grazing seasons, making a total of four separate claims. The two grazing seasons for which Jayos allege damages are the 1976–77 and the 1977–78 seasons. Evidence was produced at trial which tended to show that Jayos' ability to obtain a temporary grazing permit for the 300 head of cattle for both the 1976–77 and 1977–78 seasons was uncertain. The trial court addressed this issue in its findings of fact and conclusions of law:

> "13. Thus JAYO'S assertions that he would have obtained *two successive* temporary permits in the years 76–77 and 77–78 for 252 head and 300 head and that he would have been able to use them in the manner he claims, is speculative. The evidence is particularly persuasive that *after* the grazing season of 76–77 he would likely have been denied the 300 head permit unless he had actually acquired ownership of the Maynard Ranch." (Emphasis added.)

Jayos contend that the trial court erred in concluding their ability to obtain the temporary permit was speculative. This court will not disturb a trial court finding that is supported by substantial and competent, although conflicting, evidence. I.R.C.P. 52(a). *Conley v. Amalgamated Sugar Co.,* 74 Idaho 416, 263 P.2d 705 (1953). However, the trial court's finding in this instance is somewhat

2. Circle C was able to keep two permits for a total of 552 head on the Pittsburg allotment, which was in excess of the 300 head upper limit, because they were granted a "special limit." The special limit was terminated in December 1976.

3. Because of a mixup, for which Circle C admitted responsibility, the 252 Jayo cattle were never separated from Circle C's herd and the entire Circle C herd was run onto the Pittsburg allotment. For the 1975–76 grazing season, neither permit was used by Jayos but the parties reached a temporary agreement compensating Jayos for harm done by the mixup.

unclear. Although two separate seasons are in issue, the 1976–77 and the 1977–78 seasons, the trial court's findings of fact and the conclusions of law do not treat them separately. It is clear that the trial court was persuaded by evidence presented that Jayos would likely not have been able to obtain the permit for the 1977–78 season. Their ability to obtain a permit for the 1976–77 season, however, is still in question. Presumably Jayos' ability to obtain the 1977–78 permit was unlikely because that season would have been the second *successive* season for that permit and renewal of a temporary permit was unlikely. The trial court noted that Jayos would probably have been denied the permit *after* the 1976–77 season, implying that Jayos would have been able to obtain a permit for that season (1976–77).

We conclude that there is substantial and competent evidence upholding the district court's finding that recovery for damages as to the 1977–78 grazing season would be too speculative. However, it would appear that Jayos would have been able to obtain a temporary permit for the 1976–77 season. The matter must therefore be remanded to the district court for determination of this issue.

## II

Jayos' second assertion of error relates to their claim for recovery of lost profits by way of loss of rental income. They argue that were it not for respondents' breach they could have grazed all of their own cattle on forest service land and rented the leased property to a third party. Mr. Jayo testified that he had made arrangements with a Lonnie Jones to sublease the Maynard Ranch; Mr. Jones was to have grazed 300 cattle on the Maynard property for the eight-month season and paid Jayos $10.00 per head. Jayo testified that his expenses for such an arrangement would have been minimal and that his damages for this particular grazing season (1976–77) were thus $24,000.00.

This court sets out the requirements for recovery of lost profits in *Lamb v. Robinson,* 101 Idaho 703, 620 P.2d 276 (1980). They are, first, that the damages be proved with reasonable certainty, and second, that they were within the contemplation of the parties. 101 Idaho at 705, 620 P.2d at 278. The test for "reasonable certainty" has been held by this court to require only that the damages be taken out of the realm of speculation. 101 Idaho at 705, 620 P.2d at 278. After reviewing the entire record we cannot say that the trial court erred in holding that the claim for lost profits from future rental of the Maynard property failed as being speculative. We do not reach the issue of foreseeability inasmuch as the damages do not pass the reasonable certainty requirement.

## III

Jayos contend the trial court erred in denying damages for the value of the hay lost. Mr. Jayo testified that because he was unable to graze his 300 head of cattle on forest service land during the grazing season he had to provide feed for them. He provided feed out of his own supply of hay, a total of 125 tons for the season. Mr. Jayo testified that the hay was worth $60.00 per ton in that location and he claimed damages of $7,500.00 for the 1976–77 grazing season. The district court concluded:

"5. .... Assuming JAYO would be entitled to damages on this claim, the measure of such damages would be the value of the hay less what it would cost JAYO to raise and harvest the same. No evidence was introduced regarding such costs. The court can only presume there would be some substantial costs involved in cutting and harvesting the hay, and based upon the evidence produced at trial the court is unable to fix the amount of any such damage."

Appellants contend the district court erred in applying that measure of damages. We agree. Were the Jayos contending they were deprived of proceeds from the sale of a crop of hay which was destroyed in the field, then it would have been necessary to deduct from the market value of the hay the harvesting expenses Jayos would have

been spared from incurring due to destruction of the field crop. But that is not the case. Jayos incurred the costs of cutting and putting up the hay and they are entitled to be compensated for such costs. The proper measure of damages for Circle C's failure to waive the 300 head permit and thereby make available winter pasturage for the cattle would be the cost of other suitable pasturage or feed. *Coury Bros. Ranches, Inc., v. Ellsworth,* 103 Ariz. 515, 446 P.2d 458 (1968). If the evidence establishes that Jayos provided 125 tons of their own hay to help replace the pasturage denied them by Circle C's breach, then Jayos are entitled to recover the reasonable value of that hay. Accordingly, we reverse the judgment below insofar as it denies appellants compensatory damages for the value of their hay and we remand for further findings on the nature and amount of damages, contingent, of course, upon a finding of the trial court favorable to the Jayos on the issue of their ability to obtain the 300-head permit as discussed above.

Finally, appellants claim error in the trial court's determination that there was no prevailing party as the basis for an award of costs and attorney fees. This case being remanded for further proceedings, that issue should be reconsidered by the trial court at that time.

The judgment is reversed in part and remanded. Costs on appeal to appellants.

DONALDSON, C.J., and BAKES, J., concur.

SHEPARD, J., concurs in the result.

BISTLINE, Justice, concurring in part.

On the realistic side, agreeing with the Court's view that some reversal is required, I would reverse *in toto.* On remand the case will be heard by a different district judge. In addition to that brush with reality, I am not wholly persuaded that the Court correctly declares that the Jayos may have a claim to damages for the first lease term with respect to Circle C's breach of the agreement, but not as to the second. Conceding that the federal government might not give anyone a grazing permit, on the other hand, it can and does do anything it wants to do. The party breaching an agreement is not in a position to argue that "even had Circle C not breached, the government would not have accepted Jayo as a permitee." Rather, it was for Circle C to comply with its agreement, and let time alone tell what the federal government would do. Believing that speculation should be ruled out in this Court, and in the trial court as well, as to both years, but nevertheless not outright saying the majority is wrong in finding an ascertainable line of demarcation as to Jayo's prospects for each of the two years, I would, on the remand, leave to the district judge to whom the case falls the right to decide as to both years, unfettered by this Court's directions as to the limits of provable damages.