678 P.2d 94

**Marcos GALINDO, Plaintiff-Respondent,**

v.

**Gary J. HIBBARD and Donna G. Hibbard, Defendants-Appellants.**

No. 13934.

Court of Appeals of Idaho.

Feb. 29, 1984.

Petition for Review Denied
May 3, 1984.

As Corrected April 17, 1984.

Cecil D. Hobdey, Gooding, Roger D. Ling, Rupert, for defendants-appellants.

James Charles Tucker, Twin Falls, for plaintiff-respondent.

BURNETT, Judge.

This case arises from the ill-fated lease of a ranch in Lincoln County. The landlords, Gary and Donna Hibbard, have appealed a judgment entered for the tenant, Marcos Galindo, upon his complaint that the landlords breached the lease. The principal issues are (1) whether the district court correctly ruled that the tenant had been wrongfully evicted; and, if so, (2) whether there was sufficient, properly admitted evidence to support a jury's award

of damages to the tenant. We affirm the judgment entered upon the verdict.

The events producing this litigation are undisputed. The landlords leased a ranch, including a cattle herd, to the tenant for a term of three years. The tenant agreed to pay cash rent and to return the ranch in good condition, with a comparable herd, at the end of the lease term. The lease instrument provided that if the tenant failed to perform any of his obligations, the landlords—after giving the tenant thirty days' notice—could terminate the lease, causing the tenant's leasehold interest to be forfeited.[1]

During the first lease year the landlords found fault with many of the tenant's ranch management practices. As the year drew to a close, one of the landlords, Mr. Hibbard, formed an opinion that the cattle were receiving inadequate care. He entered the premises and padlocked the stockyards, without giving the tenant any prior notice. He told the tenant, "I'm taking over." The tenant promptly consulted an attorney. Through counsel, the tenant advised the landlords that he considered himself wrongfully evicted, that the lease thereby had been terminated, and that he had been deprived of his leasehold interest for the remaining two years of the lease.

The tenant later sued for damages, and the landlords counterclaimed for alleged breaches of the lease by the tenant. Upon the tenant's motion, the district court entered partial summary judgment, ruling that a wrongful eviction had in fact occurred. A jury then heard evidence concerning the damages alleged in the tenant's complaint and the offsetting damages sought in the landlords' counterclaim. The

jury returned a verdict of $35,000 in favor of the tenant, with no offsets. Final judgment was entered accordingly. This appeal followed.

■ The landlords have asserted eleven errors committed by the district court. However, ten of these issues are largely overlapping. They are subsumed in our analysis of the eviction question and of the tenant's lost profits. An eleventh contention, relating to an award of costs and attorney fees by the district court, has not been supported by cited authority or by argument. Consequently, we are not required to address that issue, and we decline to do so. *Matter of Estate of Freeburn,* 101 Idaho 739, 620 P.2d 773 (1980); *Voyles v. City of Nampa,* 97 Idaho 597, 548 P.2d 1217 (1976).

I

We turn first to the eviction question, upon which partial summary judgment was entered. A summary judgment may be granted, as to all or part of the issues in a case, when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *E.g., Bennett v. Bliss,* 103 Idaho 358, 647 P.2d 814 (Ct.App.1982). Under I.R.C.P. 56(c) a motion for summary judgment must be decided upon the pleadings, depositions, admissions, affidavits and answers to interrogatories on file. On appeal, those materials will be viewed most favorably to the party opposing summary judgment. *Barlow's, Inc. v. Bannock Cleaning Corp.,* 103 Idaho 310, 647 P.2d 766 (Ct.App.1982). In this case the materials disclose no genuine issue concerning Mr. Hibbard's actions,

---

1. The full text of this provision in the lease agreement reads as follows:

NOTICE: It is understood and agreed that if the lessees shall commit any breach of the covenants, agreements, conditions or terms of this lease, then it shall be optional with the lessors to terminate and forfeit this lease and enter into possession of the premises and exclude all other persons therefrom, provided however, that before termination for failure to perform any covenant in this agreement, lessors shall give to the tenants written notice specifying the particular in which the tenants

are in violation of this lease and if within 30 days from the time such notice is served upon the tenants, they have remedied such breach, then such notice shall become inoperative and of no effect and tenants shall remain in possession of said premises. If tenants, however, shall fail to remedy said default within 30 days of receiving said notice, then tenants shall render peaceable possession of said premises to the lessors or be considered as unlawful detainers holding over after the expiration of said lease and may be dealt with accordingly.

described above, upon which the claim of eviction was based.

On appeal the landlords have drawn upon portions of the trial transcript in an effort to show that a genuine issue of material fact existed as to eviction. The motion for summary judgment on this issue was granted nearly two years before trial. The landlords have presented no authority that a party may suffer adverse partial summary judgment on the question of liability but later seek to overturn that judgment upon evidence presented at a trial on the issue of damages. We believe the contrary is suggested by Rule 56(c), which specifically authorizes a summary adjudication of liability separate from a subsequent determination of damages. Under that rule it was incumbent upon the landlords to establish a genuine issue concerning liability while the motion for summary judgment was extant.

However, we also note that the partial summary judgment disposed of less than all claims of the parties. It was not certified as final under Rule 54(b). Therefore, it was interlocutory and arguably subject to later revision under that rule. *Cf. Baker v. Pendry*, 98 Idaho 745, 572 P.2d 179 (1977) (partial decree partitioning real property held subject to revision). This case illustrates how a tension may exist between the finality provisions of Rule 54(b) and the separate adjudications of liability and damages contemplated by Rule 56(c). However, we need not undertake to resolve that tension today. We have compared the evidence at trial with the record on summary judgment. We find no material difference as to the landlords' conduct, which formed the basis of the court's eviction ruling. Regarding the tenant's conduct, the evidence at trial made it clear that he did not quarrel with Mr. Hibbard when confronted with the statement about "taking over." However, as noted above, the tenant promptly consulted an attorney about his legal rights. We believe the law required nothing more from him as a predicate to raising the eviction issue.

The issue, then, is narrowed to whether Mr. Hibbard's actions constituted an eviction. Idaho statutory and case law affords no guidance in identifying the elements of an unlawful eviction in this type of case. Consequently, we must reason by example from decisions in other jurisdictions.

*Deeb v. Canniff,* 29 Colo.App. 510, 488 P.2d 93 (1971), is a case similar to ours. There a landlord, without giving notice to the tenant, changed the locks on the tenant's store and deprived the tenant of possession. As noted by the court:

> The lease provided that if the tenant defaulted in the payment of rent, "the landlord shall give to the tenant three (3) days notice to correct" the default. Any other default required the landlord to give ten days notice. If the default was not corrected within the specified period then the landlord could elect either to terminate the lease, evict the tenant, and retake possession or to retake possession without terminating the lease.

*Id.* 488 P.2d at 95. The court assumed that the tenant had defaulted; but the court held that because notice had not been given, the landlord could not employ remedies available only upon notice. The court further held that "a re-entry by the landlord or a willful act of the landlord which materially disturbs the possession of the tenant constitutes an eviction and terminates the lease." *Id. See also Berae Co. v. Gorman,* 168 Colo. 551, 452 P.2d 379 (1969).

In contrast, the landlords in this case invite our attention to *Boyd v. Gore,* 143 Wis. 531, 128 N.W. 68 (1910). There a landlord objected to the tenant's remaining on the premises because the tenant had incurred substantial debt. As explained by the court:

> [The landlord] thought [the tenant] had better leave because he could not carry on the place, and [the tenant] said: "All right, if you think I cannot, that is enough." In substance this is the entire basis for a claim of eviction and [the tenant] closes his testimony on the subject with this question and answer: "Q. You moved off the place simply because [the landlord] told you he didn't want you to stay there any longer? A. Yes, sir; I

did." This does not show an eviction, but, taken in connection with the acceptance and resumption of possession by the landlord, it does show a voluntary surrender. *Id.* 128 N.W. at 70. Analogizing to *Gore*, the landlords argue that the present case involves a voluntary surrender, not an eviction. We disagree. Mr. Hibbard's conduct went beyond mere words; he entered the premises and padlocked the stockyards. Additionally, his statement, "I'm taking over," is more assertive than the landlord's expression in *Gore*.

■ The landlords also contend that they did not deny the tenant access to the entire ranch, but only to the stockyards. However, it appears without dispute that the cattle operation was a significant component of the lease. Denial of access to the stockyards "materially disburb[ed] the possession of the tenant" as denoted in *Deeb v. Canniff, supra*. Consequently, we hold that the denial of access, coupled with the statement about taking over, constituted an eviction and terminated the lease.

■ The landlords further urge that, even if an eviction occurred, it was not wrongful because no prior notice to the tenant was required by statute. The landlords rely upon I.C. § 6–303(4), which provides that a tenant terminates his lease upon committing waste.[2] The landlords contended below that the tenant had committed waste by failing to care adequately for the cattle. The jury implicitly rejected this contention by awarding no damages on the landlords' counterclaim. Of course, that determination had not been made when the eviction question was decided in summary judgment. However, the landlords' reliance upon § 6–303(4) was misplaced for two additional reasons. First, even if waste had occurred, the statute requires three days' notice before the land-

lord could take possession—a requirement not satisfied here. Second, and more fundamentally, the tenant's right to notice under the lease agreement was not displaced by the statute. The parties to a real estate lease are entitled to negotiate default, termination and notice provisions affording the tenant greater protection than those prescribed by statute. When the parties agree to such provisions, their agreement is binding. *See Riverside Development Co. v. Ritchie*, 103 Idaho 515, 523 n. 6, 650 P.2d 657, 665 n. 6 (1982). Thus, the landlords' failure in this case to comply with the thirty-day notice provision of the lease was not excused by § 6–303(4).

We conclude that the tenant was wrongfully evicted. Accordingly, we uphold the district court's ruling upon the tenant's motion for summary judgment. This ruling established the landlords' liability for breach of the lease. As noted earlier, a jury later considered the tenant's damage claim and the landlords' counterclaim, deciding in favor of the tenant. We now turn to the landlords' attack upon the verdict.

## II

■ In appropriate circumstances, a landlord's breach of a lease may give rise to the tenant's right to recover lost profits. *Cf. Circle C Ranch Co. v. Jayo*, 104 Idaho 353, 659 P.2d 107 (1983) (acknowledging general rule while holding evidence insufficient). Here, the jury awarded lost profits for the remaining two years of the lease. The landlords now argue that the verdict should be set aside because the lost profits were not proven with reasonable certainty and because part of the evidence was improperly admitted.

## A

■ Consequential damages for a breach of contract are recoverable if they

---

**2.** The full text of I.C. § 6–303(4) reads as follows:

> A tenant or subtenant, assigning or subletting, or committing waste upon, the demised premises contrary to the covenants of his lease, thereby terminates the lease, and the land-

lord, or his successor in estate, shall, upon service of three (3) days' notice to quit upon the person or persons in possession, be entitled to restitution of possession of such demised premises under the provision of this chapter.

were within the reasonable contemplation of the parties at the time of contracting and have been established with reasonable certainty. *E.g., Clark v. International Harvester Co.,* 99 Idaho 326, 346, 581 P.2d 784, 804 (1978); *Harrington v. Hadden,* 69 Idaho 22, 202 P.2d 236 (1949). These requirements apply to damages for lost profits arising from breach of a lease agreement, unless the agreement provides a different measure of damages. *See Lamb v. Robinson,* 101 Idaho 703, 620 P.2d 276 (1980).

The first requirement—that lost profits be within the reasonable contemplation of the parties—is not at issue here. However, the second requirement—that lost profits be proven with reasonable certainty—is contested. The standard of reasonable certainty does not demand proof with mathematical exactitude. Rather, it "require[s] only that the damages be taken out of the realm of speculation." *Circle C Ranch Co. v. Jayo,* 104 Idaho at 356, 659 P.2d at 110; *Big Butte Ranch, Inc. v. Grasmick,* 91 Idaho 6, 10, 415 P.2d 48, 52 (1966); *cf. Eliopulos v. Kondo Farms, Inc.,* 102 Idaho 915, 643 P.2d 1085 (Ct.App. 1982) (damages for crop loss). The calculation of lost profits must be based upon evidence which leads to a reasoned conclusion. *Nora v. Safeco Insurance Co.,* 99 Idaho 60, 577 P.2d 347 (1978).

In this case, the tenant lost money during the first year of the lease. Upon this fact the landlords contend that, as a matter of law, the tenant could not have established lost profits during the ensuing two years with reasonable certainty. However, there was evidence that the first year's loss was due to unanticipated frost and hail. Moreover,

> a plaintiff is not categorically denied the right to recover lost profits simply because he is engaged in a relatively new business. The pivotal question is not whether the plaintiff has proven an established earning record but whether he has proven the damages for lost profits with reasonable certainty, although the former is often relevant to the latter.

*Clark v. International Harvester Co.,* 99 Idaho at 346–47, 581 P.2d at 804–05; *accord Vickers v. Wichita State University,* 213 Kan. 614, 620, 518 P.2d 512, 517 (1974).

There was evidence at trial from which the jury could have inferred that the tenant was capable of earning a profit during the last two years of the lease. The tenant had operated the ranch with financing from the Farmers Home Administration (FmHA) and had developed a history of expenses incurred in the operation. These expenses were presented in evidence through cancelled checks and by testimony. The tenant testified to his farming plans for the remaining years of the lease. He outlined his expected crop acreages and the expected yields from the cattle herd. The tenant was competent to testify on these subjects. *Nora v. Safeco Insurance Co., supra.* Although the tenant, prior to this lease, had not operated a farm or ranch on his own, he had worked for many years in agriculture. His experience included nine years as a ranch foreman responsible for planting and harvesting of crops as well as for the care and maintenance of a cattle herd. He had worked for the landlords before the lease and, by Mr. Hibbard's admission, "did an exceptionally good job." In our view this evidence, combined with the evidence examined below, was sufficient to take damages "out of the realm of speculation" and thus to satisfy the requirement of reasonable certainty.

B

We now turn to evidence which the landlords contend was improperly admitted. The tenant presented, over objection, testimony by a neighboring farmer concerning that farmer's average crop yields. The tenant also called as a witness another local farmer who served as an officer of FmHA and who testified about average yields and crop prices in Lincoln County. Because these witnesses were engaged in businesses similar to the tenant's operation, we find no error in the district court's determination that their testimony was relevant and admissible. *Nora v. Safeco In-*

surance Co., supra; Speer v. Quinlan, 96 Idaho 119, 525 P.2d 314 (1974). Of course, the weight given this testimony was for the jury to determine. Although such testimony, by itself, might not have sufficed to show the productivity of the leased ranch, the tenant and landlords also stipulated to various actual crop yields on the ranch.

The tenant also presented, over relevancy and hearsay objections, extracts from two annual publications of "Idaho Agricultural Statistics," prepared by the United States Department of Agriculture and the Idaho Department of Agriculture, relating to average yields of barley in Lincoln County. There was evidence that the tenant intended to raise barley during the last two years of the lease. Therefore, the evidence was relevant. Moreover, these publications came within the "learned treatise" exception to the hearsay rule. *See Mohr v. Shultz*, 86 Idaho 531, 388 P.2d 1002 (1964).

The landlords also objected, upon the ground of relevancy, to testimony by the FmHA officer about the price of yearling heifers. However, there was evidence that the tenant intended to market the increase in the cattle herd; consequently, cattle prices were relevant. *See Big Butte Ranch Co. v. Grasmick*, 91 Idaho at 10, 415 P.2d at 52.

Finally, the landlords objected to the admission into evidence of the tenant's "Farm and Home Plan," prepared for FmHA, which had projected the expected income and expenses for the second lease year. The FmHA plan was admitted during testimony by the FmHA officer. The objection was made upon the dual grounds of relevancy and hearsay. Before addressing each ground, we note that although the FmHA document arguably was self-serving, this characteristic alone would not render it inadmissible. *See Rindlisbaker v. Wilson*, 95 Idaho 752, 756, 519 P.2d 421, 425 (1974) (*disapproving Jackson v. Blue Flame Gas Co.*, 90 Idaho 393, 412 P.2d 418 (1966)). It is also important to note how the information on the form was developed. The FmHA officer testified that he had worked with the tenant in formulating the plan, based upon the tenant's anticipated farming scheme for 1977, his anticipated yields, and his past expenses. The officer further testified that such plans regularly were used to arrange financing with FmHA.

With these considerations in mind, we deem it clear that the plan was relevant to show the tenant's prospective performance under the lease during the second year. On the hearsay question, we believe the plan reasonably could have been viewed, in essence, as a supplement to the tenant's own testimony. It contained information furnished by an in-court declarant who could have been, and was, cross-examined under oath. So viewed, the form would not constitute hearsay. *See* G. BELL, HANDBOOK OF EVIDENCE FOR THE IDAHO LAWYER 126 (2d ed. 1972). Alternatively, even if the FmHA Plan were viewed as entirely separate from the tenant's testimony, it was a business record excepted from the hearsay rule under I.C. § 9–414. In either event, it was properly admitted into evidence.

We conclude that the district court did not err in its admission of evidence concerning the tenant's lost profits. Viewing the entire record, we further conclude that the jury's verdict is supported by substantial and competent, though in some instances conflicting, evidence. It will not be set aside. *E.g., Quincy v. Joint School Dist. No. 41*, 102 Idaho 764, 640 P.2d 304 (1981).

The judgment upon the verdict is affirmed, with costs awarded to the tenant. However, because the lease agreement does not provide for the tenant to recover attorney fees in litigation, and because attorney fees have not been requested on appeal pursuant to any other authority, we award no fees.

WALTERS, C.J., and SWANSTROM, J., concur.